JOHNSTON, Plaintiff in error, vs. JOHNSTON, Defendant in error.

*January 12 — February 5, 1895.*

*Parent and child: Custody of minor children.*

1. If the father is an unfit person to have the custody of his minor children such custody will be awarded to the mother if she is a competent person; but if it be for the welfare of the children that they be committed to the care of another, the court, in the exercise of sound discretion, may award their custody accordingly.

2. In *habeas corpus* proceedings by a father to obtain the custody of his infant children, it was admitted on the trial that he was not a fit person, and it appeared that the mother was of good character and, although in straitened circumstances, was industrious and able to care for them. *Held*, that it was a wise exercise of discretion to refuse to take them from their mother in order to give them to their paternal grandfather, who was wealthy, although it further appeared that the mother had at times been passionate and profane of speech under provocation of shameful misconduct on the part of her husband, and that her mother, with whom she lived, was a person of coarse and vulgar speech and conduct.

ERROR to review a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

Johnston vs. Johnston.

This is a writ of error to the circuit court for Winnebago county, to review the judgment of that court in a proceeding by the plaintiff in error on his petition for a writ of *habeas corpus* directed to the defendant in error, his wife, to obtain the custody and control of the minor children of their marriage, namely, Lulu May Johnston, aged eight years, and Nathan F. Johnston, aged seven years; the petitioner claiming that he is a suitable and proper person for the care and custody of his said children and willing and able to properly provide for them, and that his wife is an unfit person to have the care and custody of them and has not the means and ability to support and properly provide for them and furnish them a suitable home; that she had clandestinely taken the children from school where he was sending them, and had kept them secreted and deprived them of their liberty. Return was made to the writ, and there was an issue thereon and trial. After hearing the evidence, and the trial judge having had a private conference with the children, the court made an order remanding them to the care and custody of their mother until they should arrive at an age when they might properly select their own custodian.

*F. W. Houghton*, for the plaintiff in error.

For the defendant in error there was a brief by *Thompsons, Harshaw & Davidson*, and oral argument by *J. H. Davidson.*

PINNEY, J. It appears from the evidence that the parties were married in 1885, and in April of that year went to the house of the petitioner's father, Nathan Johnston, to live; that the respondent left that place and took the children with her to her father's in Oshkosh, in February, 1887, where she kept them a few weeks, and then took them to Milwaukee and kept them there until December of the same year, and then she and her husband took them back to his father's, where they remained most of the time until Octo-

ber 13, 1893, when the respondent took them from the school they were attending to her father's in Oshkosh, and had kept them there ever since; that her father was able and willing to provide her and the children a home. The parties had separated and were not living together. Evidence was given tending to show that the respondent finally left the home of her husband's father for the reason that he told her he had rented his farm and would not keep her any longer with her children; that her husband had never provided her with any home or support, nor bought her or the children any clothing; that after the children had been taken from Milwaukee to the home of the husband's father, the respondent remained in Milwaukee, the children visiting her frequently, and finally, in November, 1891, she went back to live with them at her husband's father's, doing the housework, and he boarded and clothed her and her children for a considerable time; that he was willing to provide for them, and was a man of means, a widower about sixty years of age; that a short time before the respondent took the children from the school articles were executed between the petitioner and his father, by which the children were apprenticed to him to learn stenography, and were to be provided for by him until the expiration of the respective terms of each of them, when they were to receive $500 each; that he agreed to leave them $1,500 each by his will; that he then lived with his sister, Mrs. Pugh, a competent person to care for the children.

The petitioner testified, among other things, that he had no idea how much he earned; that he had been railroading in Michigan, Minnesota, and Wisconsin, and earned from $55 to $75 a month, but sent none of his earnings to his wife or children, and never furnished them any great amount of money. The evidence tended to show that he was not a man of any means, was not industrious, but was dissipated, and consorted and held improper relations with persons of doubt-

ful, if not evil, life and fame; that he was guilty of infidel-
ity to his wife, such as would have warranted the granting
to her of an absolute divorce. Under the pressure of evi-
dence at the trial he admitted in the circuit court that he
was not a fit and proper person to have the care, custody,
and control of his children, but it was claimed that the re-
spondent was not a fit and proper person; that she was of
violent temper, and coarse in conversation, and had repeat-
edly used profane and abusive language to her husband in
the presence of their children, but this she denied. The evi-
dence, however, tended to show that on some particular oc-
casions, under circumstances of great provocation and when
exasperated by the evil conduct of her husband, she had
used violent and profane language to him; but in all other
respects it appeared that she was of unblemished character
and industrious life, and considerable evidence was given
tending to show that she was a fit and proper person to have
the care and custody of her children. There was evidence
tending to show that the respondent's mother was a person
of coarse and vulgar speech and conduct, whose presence
and example might exert an unfavorable influence upon the
children if they were permitted to remain at the home of
the respondent's father.

The trial judge had an opportunity to observe the de-
meanor and deportment of the parties in court, and heard
them testify, as well as the several witnesses they produced.
He had peculiarly favorable opportunities for arriving at a
correct conclusion in the premises, with which this court
cannot be favored. The husband and wife are living sepa-
rately, and he, having made the humiliating confession in
the trial court that he is not a proper person to have the
care and custody of the children, contents himself in this
controversy with assailing the fitness and competency of
their mother, and seeks to deprive her of their society and
of the right to care for and minister to their wants and

properly educate them.    In all such controversies, the welfare of the children is the primary consideration which must control the judgment of the court.    We could not interfere upon this writ to reverse the decision of the circuit court, unless it appears to be very clearly and decidedly against the weight of evidence.    We feel bound to say, however, that we think the conclusion at which the circuit court arrived is abundantly sustained by the evidence.

Although *prima facie* the father is entitled to the care and custody of his infant children, yet if he is an unfit person the court will award the custody to the mother if she is not an unfit and incompetent person; but, if it be for the welfare of the children that they be committed to the care of another, the court, in the exercise of sound discretion, may award their custody accordingly.    *Sheers v. Stein,* 75 Wis. 51; *Schiltz v. Roenitz,* 86 Wis. 37; *In re Goodenough,* 19 Wis. 277; *Mercein v. People ex rel. Barry,* 25 Wend. 72, 101, 102.    Strong natural affection of a devoted mother living an industrious and reputable life, though she be in straitened circumstances, is a very sufficient assurance that she will tenderly care for and properly nurture and educate her children.    It sounds ill in the mouth of the father to urge that the wife is possessed of slender means, when but for his fault they might have been more favorably situated, or to say that she was at times passionate and profane of speech under exasperating provocations of shameful misconduct on his part.    His father is a man of ample means, evidently attached to the children, and has done much for their care and support in the past, and would doubtless continue to do so in the future; but the mother is not to be deprived of their care and custody, or the children of the companionship and maternal affection of their mother, because some wealthy relative is willing to take them and give them better advantages in life than those to which they were born.    Nor can we allow controlling weight, under

the circumstances, to the charges made in respect to their maternal grandmother; for it sometimes happens that there are objectionable persons in families of high character and great respectability. It is not the office of the writ of *habeas corpus*, in a case like this, to take from an industrious, devoted, and affectionate mother her infant children, when she is able to properly care for them according to the station in life to which they were born, and their father is unfit to have their care and custody, and give them over to the custody and control of relatives, however competent and well-intentioned, or ample their resources. The judgment of the circuit court was, we think, in accordance with a proper and wise exercise of judicial discretion.

*By the Court.*— The judgment of the circuit court is affirmed.