## GILMORE *v.* KITSON ET AL.

[No. 20,491. Filed June 30, 1905. Rehearing denied October 26,
1905.]

1. APPEAL AND ERROR.—*Transcript.*—*Clerk's Certificate.*—Insub-
stantial defects in the binding of the transcript and in the
clerk's certificate thereto will be disregarded. p. 404.

2. PARENT AND CHILD.—*Custody.*—*Common Law.*—*Statutes.*—
Both by the common law and the statutes of this State the nat-
ural parents, except when unsuitable, are entitled to the custody
of their children. p. 406.

3. SAME.—*Custody.*—*Wills.*—The mother can not bequeath the
custody of her child so as to deprive the father of his right
to such custody. p. 406.

4. GUARDIAN AND WARD. — *Parent and Child.* — *Custody.* — The legal guardian can not take the custody of a minor child from its father. p. 406.

5. PARENT AND CHILD.—*Custody.*—*Forfeiture of Parent's Right.* —The father is entitled to the custody of his child, unless by misconduct, acquiescence or voluntary relinquishment he has forfeited such right, the mother being dead. p. 407.

6. SAME.—*Custody.*—*Rights of State.*—The state may, in the interests of a child, take its custody from the parents. p. 407.

7. SAME.—*Custody.*—*Welfare of Child.*—Where a parent has voluntarily given the custody of his child to others until its affections are firmly interwoven with the foster parents, the court may, in the interests of the child, refuse to grant the custody to the parent. p. 408.

8. SAME.—*Custody.*—*Evidence.*—Where the evidence shows that the father is a fit person for the custody of his child; that the mother had lived with her sister during the last months of her life; that she had bequeathed the custody of such child to such sister; that the father had not acquiesced therein but' had insisted upon the custody of the child, a finding that such sister should have the custody thereof is unwarranted. p. 408.

From Monroe Circuit Court; *James B. Wilson,* Judge.

Action by Russell H. Gilmore against Flora D. Kitson and another. From a judgment for defendants, plaintiff appeals. *Reversed.*

*J. E. Henley* and *Elliott, Elliott & Littleton,* for appellant.

*Duncan & Batman,* for appellees.

MONTGOMERY, J.—This is a *habeas corpus* proceeding instituted by appellant against appellees to obtain the custody of his infant daughter, Ruth A. Gilmore. The writ was duly issued, and a return thereto made by appellees. Appellant's exception to the return was overruled, and a reply filed. The court, upon hearing the evidence, made a general finding in which it is said "that the father, Russell H. Gilmore, is a proper person to have the care and custody of such child, but that the best interest of the child will be conserved by leaving the child in the care of the defendant Flora D. Kitson." It was accordingly adjudged that the

custody of the child be awarded to Flora D. Kitson until the further order of the court. Appellant's motion for a new trial was overruled, and an exception properly saved.

The assignments of error, stated in different forms, require us to determine the correctness of this finding and judgment.

Appellees' counsel suggest that the record does not show the filing of the general bill of exceptions, but in this they are in error. The criticisms upon the binding of the
1.    transcript and form of the clerk's certificate are not founded upon substantial defects, and will be disregarded.

The controlling facts shown by the evidence, briefly summarized, are as follows: Appellant is thirty-two years of age, and lives in Indianapolis, where he has lived all his lifetime, with the exception of two years. He is a linotype operator, has permanent and steady employment, and earns about $100 per month. He was married June 20, 1900, and lived with his wife at his home until eleven months prior to her death, when, on account of failing health, at the request of her sister, his wife went to her sister's home at Bloomington, where she remained until her death, May 5, 1904. Ruth A. Gilmore was born during wedlock on September 25, 1901. Appellee Flora D. Kitson and her mother waited upon appellant's wife during her last illness, except for eight weeks, when they had the assistance of a nurse. Appellant paid the nurse and the doctors, and sent to his wife and child, while at the home of appellees, money, gifts and flowers. Appellant lives with his mother, a widow, and single sister, in a comfortable six-room house situated in a good neighborhood. He smokes cigarettes and cigars, and drinks beer occasionally, but otherwise is of good habits, good moral character, good disposition, industrious, kind and affectionate. His mother and sister are of good character, kind and loving disposition, fond of children, and desirous of caring for the child as a member of the family.

About one month before her death, appellant's wife made a will containing the following provision: "I desire to acknowledge the great kindness shown me and my daughter Ruth during my last illness by my beloved sister, Flora D. Kitson, and her husband, Herbert T. Kitson, to express my sincere appreciation of the love and devotion shown me by them in taking me into their home and caring for me during the last year of my life. During this time my daughter Ruth is become greatly attached to my said sister and her husband, and I know by their many acts of attention and kindness that they have become greatly attached to her and love her as their own child, and are willing and able to care for and educate and guide her in the way she should go. It is therefore my will and most earnest wish and desire that my beloved sister, Flora D. Kitson, have the care and custody of my only child, Ruth A. Gilmore, during the years of her minority. In expressing this will and desire I am not unmindful of my husband, the father of said child, but make this request for the disposition of my child because I believe it will be for the best interests of my child and result in her greatest comfort and happiness."

When appellant's wife was very near to death, appellees called in some neighbors, and in their presence, as well as the presence of the family, appellant's wife asked him to promise to give the custody of the child to Mrs. Kitson; but this he very kindly, but firmly, refused to do. During the funeral exercises Mrs. Kitson remained with the child, locked in a rear room of the house, and caused a policeman to be present for the purpose of preventing any effort to take the child from her, and she afterwards refused to allow appellant to take it from her house. After the death of Mrs. Gilmore, Mrs. Kitson was, without appellant's knowledge or consent, appointed guardian of Ruth A. Gilmore by the Monroe Circuit Court, upon a showing that the child had articles of personal property bequeathed to her by her mother, of the value of $50. Appellee Flora D. Kitson is

a kind and affectionate woman, strongly attached to the child, and her husband is a peaceable and kind man, and earns from $250 to $400 per month.    They live in a comfortable home in Bloomington, and are in every way competent to be entrusted with the care of the child, and have no children of their own.    They have radical views with regard to the use of tobacco and intoxicants, and, from studying magazine articles, have become believers in the hygienic theory of treatment of diseases.    Appellant's wife was kept in a tent and given no medical treatment during her illness. An estrangement grew up between appellant and appellees by reason of conflicting views with regard to the proper treatment of his wife, and a belief on his part that appellees were seeking to alienate her affections from him.

Both under the common law and the statutes of this State, the natural parents are entitled to the custody of their minor children, except when they are unsuitable persons to be entrusted with their care, control and education. 2. *Jones* v. *Darnell* (1885), 103 Ind. 569, 53 Am. Rep. 545.

The mother can not, by testamentary provisions or otherwise, deprive the father of his right to the custody of their minor child after her death. *Moore* v. *Christian* (1879), 56 Miss. 408, 31 Am. Rep. 375; *Stapleton* 3. v. *Poynter* (1901), 111 Ky. 264, 62 S. W. 730, 98 Am. Dec. 411, 53 L. R. A. 784; *State, ex rel.,* v. *Reuff* (1887), 29 W. Va. 751, 2 S. E. 801, 6 Am. St. 676; *Taylor* v. *Jeter* (1862), 33 Ga. 195, 199, 81 Am. Dec. 202; *In re Neff* (1899), 20 Wash. 652, 56 Pac. 383.

The appointment of the legal guardian was also ineffectual to deprive the father of his right to the custody of the child.    *Dalton* v. *State* (1842), 6 Blackf. 357; *Lee* 4. v. *Back* (1868), 30 Ind. 148; *Bryan* v. *Lyon* (1885), 104 Ind. 227, 54 Am. Rep. 309; *Brooke* v. *Logan* (1887), 112 Ind. 183, 2 Am. St. 177.

This court has frequently said that, in settling disputed claims to the custody of an infant, the interest of the child is the paramount consideration.    It is apparent from the record that the assumed force of this rule persuaded the trial court into the conclusion reached. We are not disposed to qualify or criticise that principle, but we can not conceive that it should be invoked or enforced against a parent under no disabilities, unless he has forfeited his right by misconduct, or lost it by voluntary relinquishment or by long acquiescence in the care and custody of his child by another.    The assumed welfare of the child does not clothe one person who may enjoy wealth or high social position with a commission to seize and hold the child of another less favored, and usurp parental rights for the sole reason that he may be able to afford such child more of the artificial advantages of life.    The most appropriate application of the principle obtains when the child in some proper way becomes a ward of the court.    The parents in a suit for divorce or other proceeding may properly confer jurisdiction upon the court and invoke its judgment with regard to the custody of their minor children, and in such a case it can be said without qualification that the interests of such children shall be the paramount consideration.    *Leibold* v. *Leibold* (1902), 158 Ind. 60 ; *Joab* v. *Sheets* (1885), 99 Ind. 328; *Bullock* v. *Robertson* (1903), 160 Ind. 521; *Johnston* v. *Johnston* (1895), 89 Wis. 416, 62 N. W. 181.

The state, upon its own motion, may, in the interest of a child, make application to a court to deprive a parent of its custody, where such parent has abandoned or forfeited parental rights by reason of moral turpitude, vicious habits, cruel and inhuman treatment, or other conduct forbidden by statute.    *Van Walters* v. *Board, etc.* (1892), 132 Ind. 567, 18 L. R. A. 431.

The principle of the welfare of the child may be applied to defeat the claims of a parent when he has voluntarily re-

linquished to others the custody and care of his child
7.  until the affections of the child and its foster parents
have become so firmly interwoven that to sunder
them would seriously mar and endanger the future happiness and welfare of the child. *Schleuter* v. *Canatsy* (1897),
148 Ind. 384; *Berkshire* v. *Caley* (1901), 157 Ind. 1;
*Fletcher* v. *Hickman* (1901), 50 W. Va. 244, 40 S. E. 371,
88 Am. St. 862, 55 L. R. A. 896; *Bonnett* v. *Bonnett*
(1883), 61 Iowa 199, 16 N. W. 91, 47 Am. Rep. 810;
*Chapsky* v. *Wood* (1881), 26 Kan. 650, 40 Am. Rep. 321;
*Enders* v. *Enders* (1894), 164 Pa. St. 266, 30 Atl. 129, 27
L. R. A. 56, 44 Am. St. 598; *Sheers* v. *Stein* (1889), 75
Wis. 44, 43 N. W. 728, 5 L. R. A. 781.

No such case is presented by this record.    The father did
not abandon the child or relinquish his rights, or otherwise
abdicate his paternal authority.    Appellant ex-
8.  pressly declined to release to appellees his right to
the custody of his child when appealed to under the
most pathetic circumstances.    Appellees obtained physical
possession of the child by reason of their relation to and care
of the mother during her last illness, and retained it by a
display of force.

In the case of *State, ex rel.,* v. *Banks* (1865), 25 Ind.
495, the controversy was between the father and the grandfather of the child—the mother being dead—and this court
said:  "The father is the natural guardian of his infant
child, is responsible for its raising and education, and has
the right to its custody.    This is the well-settled rule, and
the statute is simply declaratory of the right as it existed at
common law.    The law, however, has a tender regard for
the interest of the infant, and in case it is made to appear
that the father, by reason of his immoral and vicious habits
and conduct, is rendered unfit to have the custody and training of his infant child, the court will refuse to award it to
him, or will even direct it to be taken from him and placed
where its moral training will be properly cared for.    But if

the father be a suitable person, the statute is express that he shall have the custody of the person and control of the education of his minor child."

In *Commonwealth* v. *Briggs* (1834), 16 Pick. 203, 205, the court said: "The court will feel bound to restore the custody, where the law has placed it, with the father, unless in a clear and strong case of unfitness on his part to have such custody."

The case of *Watts* v. *Lively* (1901) (Tex. Civ. App.), 60 S. W. 676, was a *habeas corpus* proceeding between the father and the maternal grandparents of the child, and the court of civil appeals of Texas very appropriately said: "In order to overcome the presumption of law that the best interest of the child would be subserved by placing it in the custody of the father, who is responsible for its being, and who, under the laws of God and of man, is held responsible for its care and protection, it must plainly appear that the father is unworthy of the trust." See, also, *Wishard* v. *Medaris* (1870), 34 Ind. 168; *Child* v. *Dodd* (1875), 51 Ind. 484; *Weir* v. *Marley* (1889), 99 Mo. 484, 12 S. W. 798, 6 L. R. A. 672; *Markwell* v. *Pereles* (1897), 95 Wis. 406, 69 N. W. 798; *Hibbette* v. *Bains* (1900), 78 Miss. 695, 710, 29 South. 80, 51 L. R. A. 839; *Miller* v. *Wallace* (1886), 76 Ga. 479, 2 Am. St. 48; *Bryan* v. *Bryan* (1859), 34 Ala. 516; *State* v. *Richardson* (1860), 40 N. H. 272; *Dunkin* v. *Seifert* (1904), 123 Iowa 64, 98 N. W. 558; *Giffin* v. *Gascoigne* (1900), 60 N. J. Eq. 256, 47 Atl. 25; *In re Wilson* (1903) (N. J. Eq.), 55 Atl. 160.

Appellees' claims to the custody of this child are not founded upon natural or legal rights, but only upon the superior advantages which it is assumed would be afforded the child by leaving it in their home, and under their control. The facts shown by the evidence are not sufficient to require a court to exercise its discretionary power to intervene and interfere with parental authority. We are not unmindful of the tender affection and generous impulses

which inspired the acts of appellees, and fully appreciate the noble traits of mind and heart exhibited, but they can not outweigh the sacred rights of a parent.

Courts must not be tempted to interfere with the natural order of family life, except in special cases of extreme urgency. In a case like this a court should not arrogate to itself the right to determine by its standards the welfare and benefit of the child, but should have a conscientious regard for the natural law from which we learn that the father, as a rule, knows far better what is good for his child than a court of justice can know. Paternal control of the family has been a fundamental principle in the history of mankind, and its free exercise, restricted only in the interest of humanity and good morals, is essential to the highest development of the race. What influence more likely to lead to despondency and self-destruction than the unnatural separation of a parent from his child, and what greater stimulus to worthy ambition and noble endeavor on the part of a father than the care and companionship of his motherless girl?

It is needless to elaborate argument. The father has not relinquished nor forfeited his rights as a parent, and the faults found with his habits are not of such unusual and serious character as to disqualify him from discharging his parental duties, or to make him an unfit associate of his own child.

The court erred in awarding the custody of the child, Ruth A. Gilmore, to appellee Flora D. Kitson, and the judgment is reversed, with directions to vacate the same, and to enter judgment for the delivery of said child to appellant.

Jordan, J., dissents.