



FILED

Feb 16 2024, 9:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

In the Matter of A.M.J. and A.L.J., Minor Children Alleged to be Children in Need of Services;

S.J. (Father),

*Appellant-Respondent*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

---

February 16, 2024

Court of Appeals Case No.
23A-JC-2241

Appeal from the Allen Superior Court

The Honorable Lori K. Morgan, Judge

The Honorable Sherry A. Hartzler, Magistrate

Trial Court Cause Nos.
02D08-2203-JC-149
02D08-2203-JC-150

**Opinion by Judge Tavitas**
Judges Mathias and Weissmann concur.

**Tavitas, Judge.**

# Case Summary

S.J. ("Father") appeals the trial court's order modifying custody of his sons, A.M.J. and A.L.J. (collectively "the Children"), in favor of L.G. ("Maternal Grandmother"). The Children previously lived with Maternal Grandmother after the death of their mother. After the Children returned to Father, they were adjudicated CHINS based, in part, on Father's substance abuse and physical abuse of the Children. The Children were removed from Father and placed with Maternal Grandmother throughout the CHINS proceedings, during which Father made little progress on the services he was required to complete. The trial court then modified custody of the Children in favor of Maternal Grandmother. Father argues that the trial court erred by modifying custody because the trial court should have given him more chances to complete the services and work towards reunification. We are not persuaded by Father's arguments. Accordingly, we affirm.

## Issue

[2] Father raises one issue, which we restate as whether the trial court abused its discretion by modifying custody in favor of Maternal Grandmother.

## Facts

[3] A.M.J. and A.L.J. are the sons of Father and A.G. ("Mother"). A.M.J. was born in March 2010, and A.L.J. was born in June 2012. Father's paternity was later adjudicated, and on May 20, 2014, the paternity court awarded Mother primary physical custody of the Children.

[4] In November 2016, Mother died from an overdose. *In re A.L.J.*, No. 22A-JC-2558, slip op. p. 4 (Ind. Ct. App. May 11, 2023) (mem.). At the time, Father was incarcerated or on home detention, and he either requested or consented to the Children living with Maternal Grandmother. The Children lived with Maternal Grandmother for the next three years.

[5] At some point, the Children began living with Father. The Department of Child Services ("DCS") received reports that Father was abusing alcohol and drugs and was physically abusing the Children. In March 2022, DCS removed the Children from Father and placed them with Maternal Grandmother and filed a petition that alleged the Children were children in need of services ("CHINS" and "CHINS petition").[1] The Children remained with Maternal

---

[1] The CHINS petition was filed pursuant to Indiana Code Section 31-34-1-1, which provides:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

Grandmother throughout the CHINS proceedings. Father was originally ordered to have supervised visits with the Children; however, the trial court later ordered that those visits be "therapeutic[ally] supervised." Tr. Vol. II p. 10.

[6] On June 13, 2022, the trial court adjudicated the Children to be CHINS. In its order, the trial court found the following: Father physically abused the Children, often "for no reason"; Father "put a gun to [A.L.J.]'s face with [Father's] finger on the trigger"; the Children witnessed Father engage in domestic violence with his partner; Father had previous convictions for domestic battery and a history of involvement with DCS; A.L.J. felt "terrified" of Father and "unsafe" around him; A.M.J. had trouble sleeping at Father's house due to Father's behavior, which affected A.M.J.'s performance at school; Father drove while intoxicated with the Children in the vehicle; Father tested positive for cocaine and "cannabinoids/THC"[2] on the day the CHINS petition was filed and used cocaine on at least one additional occasion during the

---

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:

  (A) when the parent, guardian, or custodian is financially able to do so; or

  (B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and

(2) the child needs care, treatment, or rehabilitation that:

  (A) the child is not receiving; and

  (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[2] Tetrahydrocannabinol, commonly abbreviated as THC, is the main active chemical in marijuana. *Medina v. State*, 188 N.E.3d 897, 900 (Ind. Ct. App. 2022).

CHINS proceedings; and Father had not engaged in any of the services offered by DCS. Ex. Vol. pp. 74-76.

[7] In its June 28, 2022 dispositional order, the trial court ordered Father to, as relevant here: (1) refrain from criminal activity and "physical discipline" of the Children; (2) refrain from the use of alcohol, illegal drugs, and other substance abuse; (3) complete substance abuse treatment recommendations and submit to random drug screening; (4) complete a drug and alcohol counseling program, family counseling program, and home based services program, including "parenting, discipline, developmental stages, coping skills, and stress management without substance use"; (5) submit to a diagnostic assessment to "identify and recommend reunification/preservation services" and follow those recommendations; (6) cooperate with DCS caseworkers and the guardian ad litem ("GAL"); and (7) attend and "appropriately participate" in all visits with the Children. *Id*. at 78-79.

[8] Father appealed the CHINS adjudication, and in an unpublished opinion, this Court affirmed the adjudication. *See A.L.J*, No. 22A-JC-2558. In particular, this Court noted that: A.M.J. wrote a letter to school personnel stating that he "wished Father would stop physically abusing him"; A.L.J. reported that Father "waved" a gun in A.L.J.'s face, Father's "finger slipped on the trigger," and the gun fired, with the bullet missing A.L.J. "by mere inches"; Father "admitted to hitting the Children with an open hand on the back of their heads on a daily basis and giving them a 'good whooping' about once a month"; the Children were diagnosed with stress disorders based on Mother's death and

Father's parenting; and the Children felt safer with Maternal Grandmother. *Id.* at 2, 7, 10.

[9] In March 2023, the permanency plan changed from the concurrent plan of reunification with Father or the granting of custody to Maternal Grandmother, to only the granting of custody to Maternal Grandmother. On April 4, 2023, DCS filed a "Motion for Permanency & Joinder," in which DCS sought to join Maternal Grandmother as a party to the CHINS proceedings and to modify custody of the Children in her favor. Ex. Vol. p. 96. The trial court held a hearing on that motion on June 11, 2023.

[10] At the hearing, the trial court heard testimony from Father's caseworker, Family Case Manager ("FCM") Paulette Eldridge. According to FCM Eldridge, Father had not started the court-ordered individual counseling services, Father was disruptive during a group substance abuse treatment program, and Father was unsuccessfully discharged from an individual substance abuse treatment program because he was making only "minimal progress." Tr. Vol II p. 44. Father had also refused numerous drug screens and, although he had several negative drug screens, Father had tested positive for THC and cocaine during the previous few months. FCM Eldridge believed it was "unsafe" for the Children to return to Father's care. *Id.* at 48.

[11] The trial court also heard testimony from Zarifa Nazarov, the therapist who led Father's therapeutically supervised visits with the Children, which took place weekly for one hour. Nazarov was chiefly concerned with Father's anger

management. According to her, Father "has a temper" and "[s]mall things set him off and he becomes aggressive and talks in a high pitch." *Id*. at 12. Father would become aggressive and disrespectful when Nazarov intervened during visits, and Nazarov often felt threatened and needed to "de-escalate" Father. *Id*. at 30. On one occasion, Father became frustrated and, when Nazarov took the Children to the parking lot to meet Maternal Grandmother, Father drove around the parking lot and called Nazarov inappropriate names in the presence of the Children. Father did not leave until one of the Children told him that Nazarov felt threatened and would call the police. On a different occasion, Father became frustrated when Nazarov intervened, approached Nazarov aggressively, and ended the session early.

[12] After several months, due to Father's behavior during visits, Wilbert Monroe, Father's Fatherhood Engagement services provider, also began attending the visits to help Father manage his aggression. Nazarov testified that it was "unusual" to have more than one person supervise visits. *Id*. at 23.

[13] Nazarov recommended that therapeutically supervised visits continue because of Father's inappropriate behavior and because Father had not begun court-ordered parenting skills and anger management services. She was also concerned with Father's psychological evaluation, which placed him at an "extremely high [risk] for future child abuse." *Id*. at 56. Nazarov could not predict when visits would progress from therapeutically supervised to supervised.

[14] The GAL was concerned with Father's failure to complete services, unwillingness to engage in substance abuse treatment, recent substance abuse related charges, criminal history, and the risk of future child abuse. The GAL recognized that the Children loved Father and that A.M.J. desired to return to Father one day; however, the GAL recommended that visits remain therapeutically supervised and that custody be modified in favor of Maternal Grandmother.

[15] As for Maternal Grandmother, the Children were doing well in school, playing sports, and thriving in her care. Maternal Grandmother testified that she would facilitate Father's continued involvement in the Children's lives. Lastly, Father testified and opposed the modification of custody. He requested that the trial court give him more chances to complete services and work toward reunification.

[16] On August 31, 2023, the trial court issued its order joining Maternal Grandmother in the proceedings, granting custody of the Children to her, and terminating DCS's wardship over the Children. In doing so, the trial court found the following: (1) Father has not demonstrated "appropriate parenting techniques, despite having received homebased parenting education"; (2) Father behaved inappropriately during visits; (3) Father has not refrained from abusing substances and was unwilling to do so; (4) Father tested positive for "marijuana and cocaine" in May 2023; (5) Father had "pending criminal charges and prior convictions for resisting arrest, conversion, and public nudity" and a "history of convictions related to substance abuse"; (6) despite

the age of the case, visits had not progressed beyond one hour weekly; (7) Father "wa[]ved a gun in the face of [A.L.J.]"; (8) the Children were "not safe" in Father's care; and (9) the Children were "thriving" in Maternal Grandmother's care. Appellant's App. Vol. II pp. 35-37.

[17] The trial court concluded:

26. The Court finds that there has been a change of circumstances so substantial and continuing as to make the terms of the custody, support and parenting time orders entered by the court . . . unreasonable. The Court finds that there has been a substantial change in one or more of the factors which the Court may consider under I.C. 31-14-13-2 and I.C. 31-14-[1]3-6 for purposes of modifying custody.

27. [F]rom the facts recited hereinabove, including the fact that [Father has] not completed the services required for reunification in the Child In Need of Services case, the Court concludes that [the] presumption favoring [Father] has been rebutted.

28. The Court find[s] that there is clear and convincing evidence that it is in the best interests of the children to grant [Maternal Grandmother] sole legal and physical custody.

29. The Court ultimately concludes that these proceedings began with child abuse and now unfortunately end with a high probability of child abuse occurring, but for the protection of placement with [Maternal Grandmother]. Despite there being some benefit from services and a bond observed with the Father and children, it is not presently safe to expand visitations beyond one hour in a therapeutic session with three professionals to redirect Father and

protect the children.  Father further has not addressed his substance use and continues to use illegal substances and has not demonstrated an ability to benefit from substance abuse counseling.

*Id*. at 37-38.  Father now appeals.

# Discussion and Decision

[18]  Father argues that the trial court erred by modifying custody in favor of Maternal Grandmother.  Father has not carried his burden of persuasion.

## I.  Standard of Review

[19]  As a general matter,

> [T]here is a well-established preference in Indiana for granting latitude and deference to our trial judges in family law matters.  Appellate courts are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.  On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.

*Hahn-Weisz v. Johnson*, 189 N.E.3d 1136, 1141 (Ind. Ct. App. 2022) (quoting *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016)) (internal citations omitted). Given our deferential review, we review orders granting custody to a third party rather than a natural parent only for abuse of discretion.  *In re Paternity of L.J.*,

223 N.E.3d 716, 720 (Ind. Ct. App. 2023); *accord K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009).

[20] Additionally, where, as here, neither party requested special findings under Indiana Trial Rule 52(A) and the trial court entered its findings and conclusions sua sponte:

> [W]e apply the two-tiered standard of whether the evidence supports the findings, and whether the findings support the judgment." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). We reverse "the findings only if they are clearly erroneous." *In re Adoption of I.B.*, 32 N.E.3d 1164, 1169 (Ind. 2015). We review any remaining issues under the general judgment standard, under which we will affirm the judgment "if it can be sustained on any legal theory supported by the evidence." *S.D.*, 2 N.E.3d at 1287. We neither reweigh the evidence nor judge the credibility of the witnesses, and we review the trial court's legal conclusions de novo. *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013).

*Hahn-Weisz*, 189 N.E.3d at 1141. When, as in this case, the factual findings are unchallenged, we accept those findings as true. *In re C.C.*, 170 N.E.3d 669, 675 (Ind. Ct. App. 2021) (citing *In re S.S.*, 120 N.E.3d 605, 614 n.2 (Ind. Ct. App. 2019)).

## II.  Concurrent Jurisdiction

We first clarify that the trial court had concurrent jurisdiction to modify custody of the Children here.  At the time of the custody hearing, Indiana Code Section 31-30-1-13 provided, in relevant part: [3]

> (a) Subject to subsection (b), a court having jurisdiction under IC 31-14 over establishment or modification of paternity, child custody, parenting time, or child support in a paternity proceeding has concurrent original jurisdiction with another juvenile court for the purpose of establishing or modifying paternity, custody, parenting time, or child support of a child who is under the jurisdiction of the other juvenile court because:

> > (1) the child is the subject of a child in need of services proceeding; or

> > (2) the child is the subject of a juvenile delinquency proceeding that does not involve an act described under IC 31-37-1-2.

> * * * * *

> (c) If, under this section, a juvenile court:

---

[3] After the hearing in this matter but before the trial court's order was issued, Indiana Code Section 31-30-1-13 was subsequently amended to its current language, which explicitly states that "a court having jurisdiction over a child who is the subject of a child in need of services proceeding or juvenile delinquency proceeding has concurrent jurisdiction with a court having jurisdiction under IC 31-14 [paternity actions] for the purpose of establishing or modifying paternity, custody, parenting time, or child support of the child."  Ind. Code § 31-30-1-13(b) (effective July 1, 2023).  Under either version of the statute, the trial court had concurrent jurisdiction here.

(1) establishes or modifies paternity, custody, child support, or parenting time of a child; and

(2) terminates a child in need of services proceeding or a juvenile delinquency proceeding regarding the child;

the order establishing or modifying paternity, custody, child support, or parenting time survives the termination of the child in need of services proceeding or the juvenile delinquency proceeding until the court having concurrent original jurisdiction under subsection (a) assumes or reassumes primary jurisdiction of the case to address all other issues.

(d) A court that assumes or reassumes jurisdiction of a case under subsection (c) may modify child custody, child support, or parenting time in accordance with applicable modification statutes.[4]

As this Court has observed, this statute "evidences a clear intent by the legislature for a CHINS court to be able to establish or modify custody, child support, or parenting time of a child over whom it exercises jurisdiction," even when the child is also subject to a paternity action.[5] *M.M. v. Ind. Dep't of Child Servs.*, 118 N.E.3d 70, 77 (Ind. Ct. App. 2019).

---

[4] Indiana Code Section 31-30-1-12 contains similar provisions regarding concurrent jurisdiction between trial courts in dissolution and children in need of services cases.

[5] We note that Indiana Code Section 31-17-2-3(a)(3) requires that a child custody proceeding be commenced by "a child, by the child's next friend, if the child is the subject of a" CHINS petition. A "child's next friend" means "(1) the department; (2) the child's court appointed special advocate; or (3) the child's guardian ad litem." I.C. § 31-17-2-3(b). As Father makes no argument regarding this statute, we do not address it.

## III. Third-Party Custody

[22] Where a third party seeks to modify custody in favor of the third party rather than the natural parent, our courts engage in a three-step analysis. First, Indiana recognizes the presumption that "'natural parents are entitled to the custody of their minor children, except when they are unsuitable persons to be entrusted with their care, control, and education.'" *In re Guardianship of B.H.*, 770 N.E.2d 283, 285 (Ind. 2002) (quoting *Gilmore v. Kitson*, 74 N.E. 1083, 1084 (Ind. 1905)). The parent "comes to the table with a 'strong presumption that a child's interests are best served by placement with the natural parent.'" *K.I.*, 903 N.E.2d at 460 (quoting *B.H.*, 770 N.E.2d 287)). Accordingly, when custody is at issue between a third party and a natural parent, we begin with the presumption in favor of the natural parent. *Id*.

[23] In the second step, the third party must rebut the natural-parent presumption with clear and convincing evidence. *Id*.; *B.H.*, 770 N.E.3d at 287. "'The presumption will not be overcome merely because a third party could provide the better things in life for the child.'" *B.H.*, 770 N.E.2d at 287. Instead, in determining whether the presumption is overcome, the trial court may seek "guidance" from the three *Hendrickson*[6] factors: "(i) unfitness on the part of the parent, (ii) long acquiescence in the third party's custody of the child, or (iii) voluntary relinquishment of the child such that the affections of the child and

---

[6] *Hendrickson v. Binkley*, 316 N.E.2d 376 (1974).

third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child." *K.I.*, 903 N.E.2d at 459. The trial court is also free to rely on relevant factors other than the *Hendrickson* factors. *Id.*

[24] Additionally, in determining whether the natural-parent presumption has been overcome, the trial court must make "'detailed and specific findings . . . .'" *In re Guardianship of B.W.*, 45 N.E.3d 860, 866 (Ind. Ct. App. 2015) (quoting *B.H.*, 770 N.E.2d at 287). "A generalized finding that placement with a third party is in the child's best interests is insufficient to overcome the presumption in favor of the natural parent." *Id.* (citing *B.H.*, 770 N.E.2d at 287). "And if a decision to place custody of a child in a third party, rather than a parent, is based solely upon the child's 'best interests,' as opposed to a finding of parental unfitness, abandonment, or other wrongdoing, 'such interests should be specifically delineated, as well as be compelling and in the real and permanent interests of the child.'" *Id.* (quoting *In re Guardianship of L.L.,* 745 N.E.2d 222, 231 (Ind. Ct. App. 2001), *trans. denied*).

[25] If the third party overcomes the natural-parent presumption, the trial court proceeds to the third step. In the third step, the third party must demonstrate that, based on the relevant custody statutes, a "substantial change" occurred and that "'the child's best interests are substantially and significantly served by placement'" with the third party. *K.I.*, 903 N.E.2d at 460-61 (quoting *B.H.*, 770 N.E.2d at 287); Ind. Code § 31-30-1-13(e) (providing that "[a] court that assumes or reassumes jurisdiction of a case under subsection (d) [governing the

modification of custody and termination of CHINS proceedings in the same action] may modify child custody, child support, or parenting time in accordance with applicable modification statutes"). [7] The third-party's burden of proof in this step remains proof by clear and convincing evidence. *K.I.*, 903 N.E.2d at 460-61.

[26] In sum, to modify custody in favor of Maternal Grandmother here, the trial court was required to begin with the presumption in favor of Father, the Children's natural parent. Then, in the second step, the trial court was required to find by clear and convincing evidence that the natural-parent presumption was overcome. Lastly, if the trial court so found, the trial court was required to find, also by clear and convincing evidence, that, based on the relevant custody statutes: (1) a substantial change occurred, and (2) modifying custody was in the Children's best interests.

## IV. The trial court did not abuse its discretion by modifying custody in favor of Maternal Grandmother

[27] We conclude that the trial court did not abuse its discretion by modifying custody in favor of Maternal Grandmother. Beginning with the natural-parent presumption, DCS overcame this presumption with evidence that Father was "unfit[]" as a parent. *K.I.*, 903 N.E.2d at 459.

---

[7] This provision was codified at subsection (d) at the time of the custody hearing here.

[28] Father's unfitness is demonstrated by his substance abuse and physical abuse of the Children. The Children were adjudicated CHINS based, in part, on these factors. And despite services offered in the CHINS proceeding, Father's substance abuse was unresolved. Father abused alcohol, marijuana, and cocaine; drove while intoxicated with the Children in the vehicle; and has several substance abuse related convictions. By the time of the custody hearing here, Father had failed several drug tests, failed to complete substance abuse related treatment services, and had not demonstrated any willingness to curb his substance abuse. *Cf. In re Adoption of T.W.*, 859 N.E.2d 1215, 1218 (Ind. Ct. App. 2006) (affirming finding that parent was unfit based, in part, on parent's "drug use and criminal convictions" and affirming children's adoption by relatives).

[29] As for Father's physical abuse of the Children, Father admitted at the CHINS fact-finding hearing that he regularly physically disciplined the Children. Inexplicably, Father also accidentally fired a gun near A.L.J.'s head. Father and the Children engaged in therapeutically supervised visits to help the family address trauma and work toward reunification; however, Father demonstrated aggressive tendencies toward the therapist and failed to demonstrate proper anger management and appropriate parenting skills. Psychological testing placed Father at an extremely high risk of abusing the Children in the future. The trial court concluded that the Children were "not safe" in Father's care. Appellant's App. Vol. II p. 37.

[30] Turning to the significant change and best interests elements, the trial court relied on statutes governing modification of custody in paternity actions, Indiana Code Sections 31-14-13-2 and 31-14-13-6.  Indiana Code Section 31-14-13-6 provides:

> The court may not modify a child custody order unless:
>
> > (1) modification is in the best interests of the child; and
> >
> > (2) there is a substantial change in one (1) or more of the factors that the court may consider under [Indiana Code Section 31-14-13-2] and, if applicable, [Indiana Code Section 31-14-13-2.5].

Indiana Code Section 31-14-13-2, in turn, provides:

> The court shall determine custody in accordance with the best interests of the child.  In determining the child's best interests, there is not a presumption favoring either parent.  The court shall consider all relevant factors, including the following:
>
> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
> > (A) the child's parents;

(B) the child's siblings; and

(C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in [Indiana Code Section 31-14-13-2.5].[8]

[31] The trial court found that, based on these statutes, a substantial change occurred and modifying custody was in the Children's best interests. Father's substance abuse and physical abuse of the Children, coupled with the fact that the Children were thriving with Maternal Grandmother, support this finding. *See* Ind. Code § 31-14-13-2 (listing relevant factors as the "interaction and interrelationship of the child with . . . the child's parents," (§ 2(4)(A)); the

---

[8] Indiana Code Section 31-14-13-2.5(a) provides, "This section applies only if the court finds by clear and convincing evidence that the child has been cared for by a de facto custodian." The trial court here did not make a finding regarding whether Maternal Grandmother was a de facto custodian of the Children. Accordingly, we do not analyze this statute. *Cf. Hahn-Weisz*, 189 N.E.3d at 1141 (Ind. Ct. App. 2022) (declining to analyze de facto custodian statute applicable in dissolution proceedings, Indiana Code Section 31-17-2-8.5, when trial court made no findings regarding de facto custodianship).

"child's adjustment to home" (§ 2(5)); the "mental and physical health of all individuals involved (§ 2(6)); and a "pattern of . . . family violence" by the parent" (§ 2(7))).

[32] Father makes no argument regarding whether the evidence overcame the natural-parent presumption. Rather, Father only challenges the best interests element. Father argues that he made progress in his Fatherhood Engagement program, which did not begin until December 2022. Father also argues that his visits with the Children improved after Monroe became involved. Father ultimately argues that he should be given more chances to complete the court-ordered services and that "[m]oving this quickly to permanency, through a change of custody to the maternal grandmother, does not allow Father to continue with his improvement and succeed through reunification with his children." [9] Appellant's Br. pp. 15-16.

[33] We are not persuaded by this argument, as Father has had ample time to make progress on the court-ordered services. The Children were removed in March 2022 and adjudicated CHINS in June 2022. On June 28, 2022, the trial court ordered Father to engage in services. By the time the custody hearing took place on June 11, 2023, nearly one year had passed since the trial court ordered Father to engage in these services. Although Father was participating in the

---

[9] Additionally, Father argues that the trial court erred by finding that "the conditions that gave rise to the children's removal would not be remedied." Appellant's Br. p. 15. The trial court made no such finding, and moreover, that standard applies in termination of parental rights proceedings, *see* Ind. Code § 31-35-2-4(b)(2)(B)(i), which are not at issue here.

Fatherhood Engagement program, he had not completed any of the other required services. Father had also not demonstrated meaningful progress on his substance abuse treatment. Finally, Father and the Children had engaged in therapeutically supervised visits for over one year, yet the therapist was unable to predict when visits would progress to supervised, let alone unsupervised, visits.

[34] Based on these circumstances, we cannot say that the trial court erred by finding that the natural-parent presumption was overcome, that a significant change occurred, and that modifying custody in favor of Maternal Grandmother was in the Children's best interests. Accordingly, the trial court did not abuse its discretion by modifying custody.

## Conclusion

[35] We cannot say that the trial court abused its discretion by modifying custody of the Children in favor of Maternal Grandmother. Accordingly, we affirm.

[36] Affirmed.

Mathias, J., and Weissmann, J., concur.

ATTORNEY FOR APPELLANT
Roberta L. Renbarger
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana