FOR PUBLICATION

ATTORNEYS FOR APPELLANT
: 
ATTORNEYS FOR APPELLEE
:

SHERWOOD P. HILL
 
THOMAS E. WHEELER II

CLINTON E. BLANCK
 
KEVIN S. SMITH

Maurer Rifkin & Hill, P.C. Bose McKinney & Evans

Indianapolis, Indiana Indianapolis, Indiana

IN THE

COURT OF APPEALS OF INDIANA

E.N., By Her Parent And Next Friend, )

Patricia Nesbitt, and PATRICIA NESBITT, )

Individually, )

)

Appellants-Respondents, )

)

vs. ) No.  58A01-9903-CV-81

)

RISING SUN-OHIO COUNTY COMMUNITY )

SCHOOL CORP., and RIPLEY-OHIO- )

DEARBORN SPECIAL EDUCATION )

COOPERATIVE, )

)

Appellees-Petitioners. )

APPEAL FROM THE OHIO SUPERIOR COURT

The Honorable John D. Mitchell, Judge

Cause No.  58D01-9906-CP-6

December 7, 1999

OPINION - FOR PUBLICATION

RUCKER, Judge

Case Summary

When Patricia Nesbitt (Mother) refused to cooperate with the Rising Sun-Ohio County Community School Corporation and the Ripley-Ohio-Dearborn Special Education Cooperative (referred to collectively as "School") concerning the education of her sixteen-year-old developmentally disabled daughter, E.N., School filed a petition seeking to find Mother in contempt.  School also filed a petition seeking the appointment of a limited guardian over E.N. for purposes of making educational decisions on her behalf.  The trial court determined that Mother had absolved herself of contempt, but granted School's petition for a guardianship.  Mother and E.N. now appeal raising three issues for our review.  We address a dispositive issue:  did the trial court abuse its discretion in granting the guardianship petition?  We conclude that it did and therefore reverse.

Background 

Both federal and state laws guarantee a free and appropriate education for disabled children.
(footnote: 1)  The law seeks to provide a disabled child with an educational program in the least restrictive setting possible given the child's disabilities.  Accordingly, a public school is required to determine whether a child is disabled under applicable rules and statutes, develop individual educational programs (IEP) for each disabled child, and offer support services that will allow the child to benefit from the education.
(footnote: 2)  The IEP is developed by members of a Case Conference Committee (CCC), which includes representatives from the school, the student's teacher, the student if appropriate, and the parent.

Facts and Procedural History

E.N. is a sixteen-year-old student enrolled in Rising Sun High School.  She has a  lifelong history of seizures secondary to a condition of chronic status encephalopathy.  The seizures have proved difficult to control with medication.  As a result of her condition, E.N. has experienced developmental delay, behavioral problems, and difficulty attending and functioning in school.  E.N.'s disability requires special educational considerations and accommodations.  In 1996, during E.N.'s transition from middle school to high school,  School opposed the accommodations Mother felt should be included in her daughter's IEP.  As a result tension developed between Mother and School.  Among other things Mother refused to agree to the IEPs proposed by School and refused to attend several CCC meetings scheduled to discuss them.  Mother also refused a request that she provide School a copy of E.N.'s medical records.   

On August 18, 1997, in response to a proposed IEP developed by School, Mother initiated a due process hearing with the Indiana Department of Education.  Mother requested that an Independent Hearing Officer be appointed to review whether School was providing E.N. a free and appropriate public education as required by law.
(footnote: 3)  The Hearing Officer issued three separate preliminary discovery orders requiring Mother to release E.N.'s medical records.  Mother refused to comply with each order.  School then petitioned the Ohio  Superior Court under the Administrative Orders and Procedures Act to enforce the Hearing Officer's orders.  School also sought the appointment of a guardian for E.N. More specifically School alleged that E.N. was incapacitated in that she was a minor and that a limited educational guardian was needed to represent the minor relating to the following:

Participating in case conferences, annual case review, or other parent-teacher conferences;

Granting or denying written permission for evaluation, placement, or change of placement as well as permission for the student's physician to communicate with the School and/or its evaluators;

Accessing and reviewing the student's educational and medical records and sharing them with the school;

Requesting mediation, due process hearings, filing complaints, or terminating such proceedings; and

Exercising any other rights a parent has in behalf of a student under 511 IAC 7-3-1 et seq., Indiana law, or federal law.

R. at 52-53.  The trial court ordered Mother to sign a release that would allow School to gain access to E.N.'s medical records.  Mother initially declined.  However, after School sought to have Mother held in contempt, she ultimately acquiesced.  After a hearing, the trial court found that Mother had absolved herself of contempt.  However the trial court ordered the appointment of a limited educational guardian to act for E.N.  This appeal followed.

Discussion and Decision

At Mother's request the trial court entered findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A).  All findings and orders of the trial court in guardianship proceedings are within the trial court's discretion.  Ind. Code § 29-3-2-4.  Thus, we will review those findings under an abuse of discretion standard.  
In re the Guardianship of V.S.D.
, 660 N.E.2d 1064, 1066 (Ind. Ct. App. 1996).  In determining whether the trial court abused its discretion, we look to the trial court's finding of fact required by Ind. Trial Rule 52.  
See
 
Northern Indiana Pub. Service v. Dozier
, 674 N.E.2d 977, 989 (Ind. Ct. App. 1996)  The findings will not be set aside unless clearly erroneous.  
Id.
  Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them.  
DeHaan v. DeHaan
, 572 N.E.2d 1315, 1320 (Ind. Ct. App. 1991).  Further, because of the two tiered standard of review applicable here, we also will not set aside the judgment unless clearly erroneous.  
McGinley-Ellis v. Ellis
, 638 N.E.2d 1249, 1252 (Ind. 1994).  A judgment is clearly erroneous when unsupported by the findings of fact and conclusions thereon. 
DeHaan
, 572 N.E.2d at 1320. 

Ind. Code § 29-3-5-1 
et. seq
. controls proceedings for the appointment of a guardian  and provides in relevant part "[a]ny person may file a petition for the appointment of a person to serve as guardian for an incapacitated person or minor. . . . "  Ind. Code § 29-3-5-1(a).  The trial court is required to appoint a  guardian if it is alleged and the trial court finds that "(1) the individual for whom the guardian is sought is an incapacitated person or a minor; and (2) the appointment of a guardian is necessary as a means of providing care and supervision of the physical person or property of the incapacitated person or a minor."  Ind. Code § 29-3-5-3(a).  In addition, the trial court may limit the responsibilities and powers of the guardian.  Ind. Code § 29-3-8-8.  In this case the trial court made the following relevant findings:

[E.N.] is a 16 year old female with life-long history of difficult to control seizures, secondary to a condition of chronic static encephalopathy, who also experiences developmental delay and behavior problems related to her condition.

[E.N.]'s medical condition has had a negative effect on her ability to attend school and to function in school.

Mrs. Nesbitt has refused and failed [sic] case conferences which were for the purpose of assessing [E.N.]'s condition and to attempt to provide solutions for [E.N.]'s problems.

Mrs. Nesbitt has consistently obstructed the school corporation with reference to [E.N.]'s education.

That it is in the best interest of [E.N.] for a limited guardian to be appointed for [E.N.] for the limited purpose of determining the educational program for [E.N.]

R. at 216-217.  Although School alleged, the trial court did not specifically find that E.N. was either incapacitated or a minor.  This is not particularly problematic in that the trial court found that E.N. was 16 years of age.  
See
 
South Bend Community School Corp. v. Widawski
, 622 N.E.2d 160, 162 (Ind. 1993) (defining "incapacitated person" to include persons under eighteen years of age).  More problematic, however, is that the trial court did not find that the appointment of a guardian was "necessary" as a means to provide for the care or supervision of E.N.  Rather, the trial court determined that the appointment of a limited guardian was in E.N.'s best interest. 

We observe that the best interest standard is applicable in guardianship cases involving custody of a minor.  
See
, 
e.g
, 
Matter of Guardianship of R.B.
, 619 N.E.2d 952, 954 (Ind. Ct. App. 1993) ("In disputes between natural parents and third parties, a presumption exists that it is in the best interests of the child to be placed in the custody of the natural parent.").  However our research reveals no Indiana cases concerning non-custodial limited guardianships, and hence no discussion of the best interest standard in that context.  We have recognized that the right of parents to maintain custody and control of their children is subject to the children's welfare and best interests.  
Styck v. Karnes
, 462 N.E.2d 1327, 1330 (Ind. Ct. App. 1984); 
see
 
also
 
E.P. v. Marion County Office of Family and Children
, 653 N.E.2d 1026, 1032 (Ind. Ct. App. 1995) (a parent's constitutionally protected right to raise her child "must at all times yield to the child's best interest as determined by the courts of this state.").  We have also held that the "polestar of every statute governing the parent-child relationship is the best interests of the child."  
Walker v. Campbell
, 711 N.E.2d 42, 50 (Ind. Ct. App. 1999), 
reh'g denied
 (case concerning Indiana's adoption statute).  Hence, although appointment of a guardian under Ind. Code § 29-3-5-3 does not specifically require such a finding, we conclude that the best interest of the child or incapacitated person is implicit in the statute.  And this is so whether the guardianship is custodial, or non-custodial as the case is here.  This conclusion is consistent with that portion of the guardianship statute listing permissible actions a court may take "if the court finds that it is not in the best interests of the incapacitated person or minor to appoint a guardian."  Ind. Code § 29-3-5-3(c).  It is also consistent with that portion of the guardianship statute that directs the court to consider "[t]he best interest of the incapacitated person or minor" when determining whom to appoint as guardian.  Ind. Code § 29-3-5-4(7).  Accordingly, the trial court properly included the best interest standard in determining whether to appoint a guardian for E.N.’s benefit.

Having reached the foregoing conclusion we still are faced with the express statutory requirement that before a guardian is appointed, the petition for guardianship must allege, and the trial court must find, that the appointment is "necessary."  
See
 Ind. Code § 29-3-5-3(a).  Though School alleged that appointment of a guardian was necessary, the trial court made no such finding.  Nonetheless to reverse or remand on grounds that the trial court did not specifically find that an appointment of a guardian for E.N. was necessary would essentially elevate form over substance.  The trial court's recitation of evidentiary facts in support of its best interest determination implies that the court found appointment of a guardian was indeed necessary.  
See
 
Willet v. Clark
, 542 N.E.2d 1354, 1357 (Ind. Ct. App. 1989) ("Whether special findings are adequate depends upon whether they are sufficient to disclose a valid basis under the issues for the legal result reached in the judgment."); 
OVRS Acquisition Corp. v. Community Health Services, Inc.
, 657 N.E.2d 117, 124 (Ind. Ct. App. 1995) (When reviewing a judgment entered under T.R. 52, "we construe the findings liberally in support of the judgment.").  Therefore we review the findings and conclusions thereon to determine whether they support a judgment that a limited guardian was necessary as a means of providing educational care and supervision for E.N.  

Because the term "necessary" is not defined by the guardianship statute we are bound to apply its common and everyday meaning.  Ind. Code § 1-1-4-1(1); 
JKB, Sr. v. Armour Pharmaceutical Co.
, 660 N.E.2d 602, 605 (Ind. Ct. App. 1996) ("Words and phrases are taken in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute.").  Two such common and everyday meanings of the term are "1. Absolutely essential . . . . 2. Needed to achieve a certain result or effect . . . ."  
The American Heritage College Dictionary
 911 (3rd Ed. 1993).  Here, the trial court reached the conclusion that appointment of a limited educational guardian was in E.N.’s best interest and therefore necessary, i.e. “absolutely essential,” because Mother refused to attend case conferences and consistently obstructed School regarding E.N.'s education.  Apart from refusing to attend CCC meetings, which we discuss in more detail below, the only evidence School relies upon to support the trial court’s finding that Mother obstructed School regarding E.N.’s education, was Mother’s failure to provide School with E.N.’s medical records and refusal to sign an IEP.  According to School, an appropriate IEP could not be developed for E.N. without the medical records. 

We do not condone Mother's decision not to provide the records to School, especially after the Independent Hearing Officer ordered her to do so.  However, even without the medical records School was still able to draft an IEP.  The record before us shows that School prepared an IEP for E.N. based upon its assessment of E.N.'s special needs.  R. at 975-1001.  Thus, it appears that School's own testing and evaluation provided sufficient information for School to develop an IEP.  Indeed the record shows that School was aware of E.N.'s general medical condition, and had provided E.N. a free and appropriate education up to the time she entered high school.  Too, School was eventually able to obtain the records through the administrative and judicial processes.  In sum, the evidence does not indicate that Mother's conduct prevented School from providing a free and appropriate education for E.N. or  necessitated the appointment of an educational guardian.

As for Mother’s refusal to attend CCC meetings, under the special education provisions of the Indiana Administrative Code, a parent is not obligated to participate in case conferences.  511 I.A.C. 7-12-1(e)(3) ("[T]he case conference committee or annual case review committee shall include . . . [t]he student's parent, 
unless the parent chooses not to participate
.") (emphasis added).  A parent cannot obstruct a school's efforts to educate a child as required by law by failing to participate in case conferences when the law itself places no duty on the parent to participate.  Mother's decision not to attend some of the CCC meetings did not prevent School from adopting and implementing an IEP. 

Likewise, Mother's refusal to consent to an IEP did not prevent School from adopting and implementing an IEP for E.N.  The special education provisions of the administrative code make clear that the lack of consent by a parent or guardian neither prevents a school from providing nor relieves a school of its duty to provide a free and appropriate education to a student in need of special educational services.  
See
 511 I.A.C. 7-10-3(s) ("No student shall be denied a free appropriate public education as a result of a public agency's inability to obtain parental consent for preplacement evaluation or placement.").  Further, under the code, the School had available review by an Independent Hearing Officer of any IEP created by the CCC that was not approved by Mother.  511 I.A.C. 7-15-5(a)(3), (a)(4) ("A parent, 
a public agency, or the state education agency
 may initiate a due process hearing regarding . . . the appropriateness of the student's proposed or current program or placement; or . . . any other dispute involving the provision of a free appropriate education for the student.") (emphasis added).  School could then implement any IEP approved by a Hearing Officer or the Board of Education.  511 I.A.C. 7-15-5; 7-15-6 (requiring a Hearing Officer to render a written decision regarding the issues presented and allowing a party 30 days to implement the decision or initiate an appeal).  During review, and as occurred in this case when Mother sought review of the program, School could have sought relevant information, such as the medical records, that it deemed necessary to provide E.N. with an appropriate education.  
See
 511 I.A.C. 7-15-5(k) (permitting the Hearing Officer to issue subpoenas and "rule on any other matters with respect to the conduct of a due process hearing"). 

Parents are certainly not required to approve an IEP they believe is inappropriate for their child.  If a parent were simply required to approve a proposed IEP, then the consent would be rendered meaningless, and the Board of Education's goal of involving parents in the process of educating children with disabilities would be lost.  
See
 511 I.A.C. 7-6-1 (requiring a public agency to have written procedures for participation of and consultation with parents of students in special education); 511 I.A.C. 7-7-1 (requiring a public agency to provide a parent written notice and the procedural safeguards found in the special education provisions of the administrative code); 511 I.A.C. 7-12-1 (requiring the public agency to seek parental consent before placing a child in special education). 

We understand and appreciate School’s frustration in attempting to provide a free and  appropriate education for a developmentally disabled student in the face of a recalcitrant and uncooperative parent.  However, obtaining a limited guardianship over the objection of a parent in order to accomplish its responsibilities goes too far.  And that is especially so where, as here, School has the ability to provide a free and appropriate education without parental cooperation.  Parents have a fundamental right and liberty interest to direct the upbringing and education of their children subject only to limited interference from government.  
Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary
, 45 S. Ct. 571, 573, 268 U.S. 510, 534-35, 69 L. Ed. 1070 (1925).  To be sure, School’s responsibility under the facts and circumstances of this case is a difficult one to accomplish, but it is not impossible.  By advocating for what Mother believed was in her daughter’s best interest, Mother's conduct, which was lawful under the special education provisions of the code, does not show that it was absolutely essential that a guardian be appointed for E.N. 

Conclusion

We conclude that the trial court’s findings and conclusions thereon do not support a judgment that the appointment of a limited guardian was necessary to make educational decisions on E.N.’s behalf.  Thus, the trial court abused its discretion in granting School’s petition for the appointment of a guardian.  The judgment of the trial court is therefore reversed. 

Judgment reversed.

NAJAM, J., and STATON, J., concur.

FOOTNOTES
1:  
See
 20 U.S.C. § 1400, 
et seq
.; Ind. Code § 20-1-6-1, 
et seq.
; 511 I.A.C. 7-3-1 
et seq.

2:  
See
 Ind. Code § 20-1-6-1(1), (7).  

3:  When a disagreement regarding the creation or implementation of an IEP arises, the parents and school have the right to an impartial due process hearing before an Independent Hearing Officer.  A party may appeal an adverse judgment of the hearing officer to the Board of Special Education Appeals.  Judicial review is then available.  
See
 20 U.S.C § 1415(f), (g) & (i); 511 I.A.C. 7-15-5 & 6.