**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL R. AUGER**
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES T. ROBERTS**
Nashville, Indiana

**DANIEL C. REUTER**
Nashville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| KENNETH HUNTER, | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | ) No. 07A05-1205-GU-244 |
| | ) |
| DEBORAH GOODRICH and | ) |
| PAUL GOODRICH, | ) |
| | ) |
| Appellees-Respondents. | ) |

APPEAL FROM THE BROWN CIRCUIT COURT
The Honorable Judith A. Stewart, Judge
The Honorable Douglas E. Van Winkle, Magistrate
Cause No. 07C01-1003-GU-4

**March 7, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

This case involves the guardianship of a five-year-old girl. Kenneth Sr. and Tina Hunter (collectively, the Hunters) are the paternal grandparents of P.G., who was born on January 8, 2008. Dia (Mother) and Kenneth Hunter, Jr. (Father) are P.G.'s parents, and Paul and Deborah Goodrich (the Goodriches) are P.G.'s maternal grandparents. The Goodriches are P.G.'s current guardians and the Hunters petitioned to remove the Goodriches and have the trial court name them as P.G.'s successor guardians.

The issue presented here is whether the trial court erred in allowing evidence of Kenneth Sr.'s prior incidents of sexual and emotional abuse of his children, which provided a sufficient evidentiary basis for the trial court to deny the petition to change guardians. Kenneth Sr. argues that admitting such evidence was error because the alleged incidents happened many years ago, and the overwhelming evidence clearly demonstrates that he and his wife should be appointed P.G.'s guardians.

Although the trial court found, and we agree, that neither arrangement is ideal for P.G., we find that the evidence of Kenneth Sr.'s prior abuse was properly admitted in these circumstances and that the evidence was sufficient to support the trial court's decision to have the Goodriches remain as P.G.'s guardians, subject to certain modifications as ordered.

Thus, we affirm the judgment of the trial court.

### FACTS

On March 5, 2010, the Goodriches filed an emergency petition for their appointment as temporary guardians and for permanent guardianship of P.G. because of

Mother's history of mental health instability that included several suicide attempts. Both Mother and Father consented to the guardianship.

On March 22, 2010, the trial court appointed the Goodriches as P.G.'s guardians, where it determined that Mother and Father were unable to provide for P.G.'s support, maintenance, and medical care. The order stated that Mother was to have parenting time "as the parties agree in the home of [the Goodriches]." Appellant's App. p. 12. It was also determined that

> Father shall exercise parenting time with the minor child. . . . However, there shall be a deviation from the Indiana Parenting Guidelines in that Father's parenting time shall be exercised in the home of and supervised by the paternal grandparents. . . . Should Father not elect to exercise his parenting time, paternal grandparents shall have the option to exercise visitation with the ward to preserve their relationship with the child. Father shall be designated the non-custodial parent for holiday and extended parenting time purposes.

Id.

On October 7, 2011, the Hunters filed a motion for clarification and modification of the order, stating that the Goodriches had permitted Mother to take P.G. from the home on numerous occasions and spend the night in Mother's home in violation of the prior order. In response, on December 21, 2011, the Goodriches filed a petition to modify the guardianship order to permit Mother to have P.G. on an unsupervised basis.

On January 15, 2012, Mother was arrested after a physical altercation with her husband that occurred after she had attempted to commit suicide. Five days later, the Hunters filed an emergency petition to modify the guardianship for a confirmation that

3

the Goodriches should not allow Mother to have unsupervised parenting time with P.G. The Hunters also sought to have the trial court remove the Goodriches as P.G.'s guardians.

The trial court heard evidence on three different days regarding the Hunters' emergency petition.[1] During these hearings, Mother testified about the physical struggle that she had with her husband in P.G.'s presence earlier that month. Mother also admitted to a history of mental illness, that she has attempted to commit suicide on at least two occasions, and that she has threatened suicide "quite a bit." Tr. p. 12-13. Mother acknowledged that the police had been called to her residence on at least four occasions where she had threatened to commit suicide. Mother also testified that Kenneth Sr. had physically and sexually abused P.G. However, even though Mother had contacted the Indiana Department of Child Services (DCS) and the Johnson County Sheriff's Department about these incidents, they were never substantiated.

Paul Goodrich also testified and acknowledged that Mother had mental health issues and that he was concerned for P.G.'s safety while she was in Mother's care. Likewise, Debbie Goodrich acknowledged Mother's suicide attempts and her own inability to control Mother's behavior.

Katie Hurley, Kenneth Sr.'s youngest daughter, testified that Kenneth Sr. had physically, sexually, and emotionally abused her and her sister when they were children. Hurley also testified that Kenneth Sr. would drink, become intoxicated, and use

---

[1] The Goodriches withdrew their earlier petition to modify.

4

marijuana in his daughters' presence. Kenneth Sr. also failed to protect his daughters from his son's sexual abuse, even though they had reported various incidents to him. Some of these incidents occurred more than ten years ago.

Kara Hunter also testified that she believed that Kenneth Jr. did "inappropriate things" to her when she was four or five years old. Tr. p. 212-14. She also remembered that Kenneth Sr. would put his tongue in her mouth when he kissed her.

Kenneth Sr.'s former wife, Susan Falstreau, also testified about incidents that occurred nearly twenty years earlier. More specifically, Falstreau testified that Kenneth Sr. was physically and mentally abusive towards her during the marriage. At some point, Falstreau told the Goodriches that Kenneth Sr. was "horrible" and "evil." Tr. p. 244.

Kenneth Sr. denied all allegations of abuse that his daughters and ex-wife had made against him. However, Kenneth Sr. admitted abusing marijuana and alcohol at some point in his life.

Simon Gelaye, a caseworker with the DCS, testified that he became involved in the case in January 2012, after receiving a report of neglect regarding P.G. It was determined that P.G. should be removed from the Goodriches' care because they had initially promised that Mother would not live in the house. Thus, DCS personnel believed that P.G.'s safety was endangered.

When P.G. was initially removed from the Goodriches' residence, Paul refused to allow Gelaye into the residence and made threats against him. The Brown County

Sheriff's Department was also contacted to prevent Paul from following Gelaye once Gelaye had left the premises.

Finally, the guardian ad litem (GAL) testified that P.G. should be with the Hunters. Even though an allegation of child molest had been substantiated against Kenneth Jr., the GAL felt that the incident should have no bearing on the recommendation because the allegation was remote and Kenneth Jr. did not live with the Hunters.

Following the hearing, the trial court denied the Hunters' emergency petition to modify the guardianships and entered the following findings of fact and conclusions of law:

> While neither the present guardians' home nor the Hunters' home is ideal for the child, the court finds the home of the guardians to be the most suitable home for the child. The testimony of Katie Hurley and Kara Hunter is found to be truthful and such evidence establishes that Kenneth Hunter, Sr. physically, sexually and emotionally abused his own daughter when they were children. Moreover, Mr. Hunter abused alcohol and became intoxicated in his daughters' presence and openly rolled marijuana and smoked marijuana cigarettes in their presence and view. Mr. Hunter also failed to protect his daughters from sexual abuse by his son, Kenneth Hunter, Jr. when such abuse was reported to him. The court finds that the testimony of the girls' mother, Susan Falsteau, establishes that Mr. Hunter also physically and emotionally abused her and Kenneth Jr. The court finds Mr. Hunter's denials not credible.
>
> The Court does recognize that certain problems exist in the guardians' household as well. Specifically, the child's mother, Dia Goodrich suffers from certain emotional disorders which sometimes result in explosive emotional outbursts and hysteria and, on at least one occasion, violence toward her husband, Brian Cramer, which resulted in bodily injury to Mr. Cramer. Further, there is evidence that Paul Goodrich has difficulty managing his anger, although it is unknown if this was a problem before

Mr. Hunter unilaterally refused to return the child to the guardians. The court further finds the guardians exercised poor judgment in agreeing to and allowing Kenneth Hunter, Sr. and Tina Hunter to have extended parenting time with the child after knowing of the allegations of abuse of his own children, and not investigating these allegations.

Based on these findings, the trial court made the following modifications to the Goodriches' guardianship:

1. So long as Dia continues in her counseling and continues to make progress she may reside in the guardians' home and have normal contact with [P.G.], subject, however to the requirement that all contact between Dia and [P.G.] shall be supervised by one of the guardians. The guardians shall take all necessary steps to remove Dia from the home in the event she discontinues counseling against the recommendations of Centerstone or should she demonstrate hysteria or uncontrollable emotional outbursts. Dia shall immediately execute releases of information authorizing Centerstone to report her progress in treatment to the guardians and the court.

2. Paul Goodrich shall promptly schedule an appointment with Centerstone for an evaluation to determine whether he has an anger management problem and if so whether any counseling or treatment is suggested. If counseling or treatment is suggested [through Cornerstone], Paul Goodrich shall fully participate in and successfully complete such program. Paul shall execute a release of information form to permit the court to receive a report of the evaluation. . . .

3. The guardians shall not permit any overnight visits by Mr. Kenneth Hunter, Sr. or Tina Hunter. Visits shall be limited to the daytime hours. Because a relationship has been established between the paternal grandparents and the child, visitation shall occur as the parties agree. In the event the parties are not able to agree the court will consider establishing a specific schedule. The Hunters shall promptly return the child to the guardians at the end of any visit. In the event the Hunters fail or refuse to return the child as requested by the guardians, no further visits shall be permitted without a court order.

4. Any parenting time with Kenneth Hunter, Jr., shall be only where and as permitted by the guardians in accordance with any rules set by the

7

guardians and not pursuant to the parenting time guidelines. At a minimum, any parenting time by Mr. Hunter, Jr. shall be supervised by the guardians or by their designee, and not by Dia Goodrich.

5. The guardians shall keep the child enrolled in a suitable pre-school program until she begins to attend kindergarten.

6. The modifications of the guardianship order set forth in this order are effective only when the juvenile court in the CHINS case: (1) enters an order approving the modifications; or (2) terminates the child in need of services proceeding.

Hunter now appeals.

## DISCUSSION AND DECISION

### I. Admission of Testimony

Kenneth Sr. first contends that the modified guardianship order must be reversed because the trial court improperly allowed his two daughters and ex-wife to testify about his prior behavior of drug and alcohol abuse and sexual abuse. Kenneth Sr. maintains that because the alleged incidents happened when his daughters were young children and now are adults, such "evidence . . . was too remote as to be relevant." Appellant's Br. p. 26.

In resolving this issue, we note that In re the Guardianship of B.H., and S.H., Minor Children, 770 N.E.2d 283, 290 (Ind. 2002) involved litigation between a noncustodial father who sought custody of his children after their mother died and the stepfather, who sought guardianship over the children. The trial court ruled in the stepfather's favor, at least in part based on its findings of abusive behavior that was directed toward one of the children and to the deceased wife, as well as past alcohol

8

abuse. A panel of this Court reversed, observing that the decade-old behavior was irrelevant to prove the unfitness of the father at the present time. In re the Guardianship of B.H., & S.H., Minor Children, 730 N.E.2d 743 (Ind. Ct. App. 2000). However, our Supreme Court granted transfer and determined that other factors may be considered in addition to the three factors of unfitness, voluntary relinquishment, and long acquiescence in another's custody, which are criteria for placing children with someone other than their natural parent. More specifically, evidence of past abuse was placed in this category of additional considerations. Guardianship of B.H., and S.H., 770 N.E.2d at 290. In other words, our Supreme Court determined that evidence of past abuse is relevant, admissible, and potentially determinative of the present suitability of an adult to have custody of a child.

In light of that pronouncement, we find the rationale in Guardianship of B.H. and S.H. controlling here. As a result, we conclude that the trial court did not err in permitting Kenneth Sr.'s daughter and ex-wife to testify about his prior instances of abuse. Hence, his claim fails.

## II. Sufficiency of the Evidence in Support of the Trial Court's Judgment

In a related issue, Kenneth Sr. argues that the evidence was insufficient to support the trial court's judgment. More particularly, Kenneth Sr. maintains that we "should find that a reasonable trier of fact could not conclude that the trial court's judgment was established by clear and convincing evidence." Appellant's Br. p. 31.

We note that all findings and orders of the trial court in guardianship proceedings are within the trial court's discretion. Ind. Code § 29-3-2-4. We review the findings that are issued by the trial court under an abuse of discretion standard. E.N. ex rel. Nesbitt v. Rising Sun—Ohio Cnty. Cmty. School Corp., 720 N.E.2d 447, 450 (Ind. Ct. App. 1999).

In determining whether the trial court abused its discretion, we look to the trial court's findings of fact and conclusions thereon. Id. The findings will not be set aside unless they are clearly erroneous. Id. Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. DeHaan v. DeHaan, 572 N.E.2d 1315, 1320 (Ind. Ct. App. 1991). A judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions thereon. Id.

We will give due regard to the trial court's ability to assess the credibility of witnesses. In re Guardianship of J.K., 862 N.E .2d 686, 691 (Ind. Ct. App. 2007). We do not reweigh the evidence; rather, we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Id.

In this case, Kenneth Sr. maintains that the trial court had no discretion to believe the various claims of abuse because the DCS personnel did not believe the allegations, his ex-wife was engaged in a legal dispute with him, and the GAL did not believe them. Appellant's Br. p. 34-35. Moreover, Kenneth Sr. points out that the judgment must be set aside because the trial court also heard compelling evidence about the Goodriches' shortcomings as guardians.

10

Notwithstanding these contentions, the trial court was entitled to believe all of the allegations about the incidents of sexual and emotional abuse, excessive drinking, and marijuana use that were made by Kenneth Sr.'s daughters and ex-wife. Each of the witnesses testified under oath and were subject to extensive cross-examination.

Also, contrary to Kenneth Sr.'s claims, the trial court did acknowledge the evidence that was presented about the Goodriches' alleged shortcomings about their ability to serve as P.G.'s guardian. Appellant's App. p. 8. And faced with the choice of placing P.G. with someone it had determined to have a history of child molesting, failing to protect his children against child-molesting, and drug and alcohol abuse, or with guardians who have various other shortcomings to a lesser degree, the trial court chose to keep P.G. with the non-abusive guardians while ordering them to take steps and minimize and overcome their obstacles.

In short, Kenneth Sr. is requesting that we reweigh the evidence, which we will not do. As a result, we cannot say that the trial court's judgment was clearly erroneous.

The judgment of the trial court is affirmed.

RILEY, J., and BARNES, J., concur.