## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Oct 22 2015, 6:30 am

CLERK
of the supreme court,
court of appeals and
tax court

**ATTORNEY FOR APPELLANT**

Kristen R. Willadsen
Willadsen * Neal, LLC
Muncie, Indiana

**ATTORNEY FOR APPELLEE**

Kyle D. Gobel
Frankfort, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dannie Michelle Clark, <br> *Appellant-Petitioner,* <br><br> *v.* <br><br> Elizabeth Spradlin, <br> *Appellee-Respondent* | October 22, 2015 <br><br> Court of Appeals Case No. 05A02-1503-GU-174 <br><br> Appeal from the Blackford Circuit Court <br> The Honorable J. Nick Barry, Special Judge <br><br> Trial Court Cause No. 05C01-1310-GU-19 |

**Bradford, Judge.**

# Case Summary

[1] Appellant-Intervenor Dannie Michelle Clark ("Mother") appeals from the trial court's order naming Appellee-Petitioner Elizabeth Spradlin as guardian of A.C., Mother's biological daughter. A.C. was born in September of 2012, the

child of Mother and Edmund Wattis.[1]  In October of 2013, Daniel Lee Clark ("Clark")—Mother's father, A.C.'s grandfather, and Spradlin's ex-husband— petitioned for guardianship of A.C.  Mother consented to the guardianship.  At the time, A.C., Clark, Spradlin, Spradlin's daughter Lisa Thompson, and Mother lived together in Hartford City.  In April of 2014, Spradlin and Thompson moved with A.C. to Frankfort, Indiana due to concerns about A.C.'s safety while living with Clark.

[2] In June of 2014, Spradlin petitioned to remove Clark as A.C.'s guardian and name her successor guardian.  In October, the trial court granted Spradlin's motion, after which Mother petitioned to terminate Spradlin's guardianship of A.C.  Following a hearing, the trial court denied Mother's petition to remove Spradlin as A.C.'s guardian.  Mother now appeals, contending that the trial court applied the wrong standard of review and abused its discretion in finding that there had been no substantial change in one or more of the child custody factors and A.C.'s best interests were served by placement with Spradlin.  We affirm.

# Facts and Procedural History

[3] A.C. was born on September 4, 2012, to Mother and Wattis.  Within weeks, Mother and A.C. moved into the home of Clark and Spradlin in Hartford City.

---

[1] Wattis's paternity of A.C. has seemingly not been legally established, and he takes no part in this appeal.

The home was jointly owned by Clark and Spradlin, who were married for approximately twenty years before divorcing in 2007. Despite the divorce, Clark and Spradlin continued to live together in the home. Although A.C.'s residence in the Hartford City home was continuous, Mother was generally unemployed and would leave home for months at a time with neither Clark nor Spradlin knowing her whereabouts. On two occasions in the summer of 2013, Spradlin consulted with legal counsel in an effort to acquire guardianship over A.C. for herself; in each case counsel demurred because Mother's whereabouts were unknown and her consent could not be obtained.

[4] On October 29, 2013, Clark moved to be appointed A.C.'s guardian, to which Mother consented. In the months that followed, Spradlin had increasing concerns regarding A.C.'s presence in the home. A.C. shared a queen-size bed with Spradlin and Clark, and Clark would force Spradlin into sexual intercourse with him while A.C. was in the bed with them. On March 29, 2014, Spradlin noticed that Clark and A.C. were spending an inordinate amount of time in the bathroom with the door closed. Spradlin entered the bathroom to find A.C. and Clark showering together, and Clark had an erection.

[5] Spradlin separated from Clark and took A.C. to live with Thompson in Frankfort. Spradlin's understanding was that she was to have A.C. during the week and return A.C. to Clark's on the weekends so that Mother could have parenting time. This arrangement did not occur as Spradlin anticipated, and, on June 3, 2014, Spradlin moved to intervene and petitioned to remove Clark as

A.C.'s guardian and appoint her successor guardian. On October 9, 2014, the trial court held a hearing and entered an order removing Clark as A.C.'s guardian and appointing Spradlin four days later.

[6] On October 20, 2014, Mother petitioned to terminate Spradlin's guardianship. On February 12, 2015, the trial court held a hearing on Mother's petition to terminate. At the hearing, Mother testified that she lived with Clark in in Hartford City and planned to move out when she found a job, but admitted that she had not been employed for a year. Mother originally consented to Clark's guardianship in October of 2013 because she was unable to financially support A.C. Mother admitted that her financial situation had not changed since 2013. Mother also expressed her belief that Spradlin was properly caring for A.C., although Mother was concerned that A.C. might be allergic to Spradlin's cats.

[7] Spradlin testified that she, A.C., and Thompson lived in a three-bedroom townhouse in Frankfort. A.C. had her own bedroom in the townhouse, and there is a playground on the grounds. In the approximately four months since being appointed guardian, Spradlin had taken A.C. to doctors to address medical issues that had been neglected previously. Spradlin enrolled A.C. in the Indiana First Step Program, which provided home-based speech therapy and developmental therapy, and A.C. was taking swimming and tumbling classes at the Y.M.C.A. Spradlin was receiving disability benefits, and Thompson earned substantial income from her job at Frito-Lay. Spradlin believed that she had the resources to continue as A.C.'s guardian.

[8] Spradlin also testified that she had made A.C. fully available for visitation with Mother, with the exception of one weekend where A.C.'s travel was restricted due to a medical procedure. Spradlin, however, ensured that Mother had make-up time for that weekend. Spradlin indicated that she had no desire to cut Mother out of A.C.'s life and had repeatedly told Mother that she was welcome in Spradlin's home. Spradlin wanted the guardianship to continue, expressing concern that, were A.C. to return to live with Clark and Mother, "I don't think she would be in a safe environment. I know that she wouldn't be taken care of properly." Tr. p. 55.

[9] On February 26, 2015, the trial court issued an order denying Mother's petition to terminate Spradlin's guardianship of A.C., which provides, in part, as follows:

> 7. The Court finds that the guardian in this cause, Elizabeth Spradlin, has developed a strong emotional bond with the child. During those times that Spradlin resided with [Mother] in Hartford City, Indiana, Spradlin provided the daily care for the child. While [Mother] claims that she was excluded from being able to provide care for the child, the Court finds this difficult to believe. Further, Spradlin's care for the child has continued after receiving guardianship of the child. Spradlin has provided a stable home for the child in Frankfort, Indiana by enrolling the child in preschool classes, extra-activities such as swimming and tumbling. The Court also notes that the child's health care needs have been addressed by the guardian including follow-up treatments for the child's eyes regarding issues with the child's tear ducts. The child's specific health needs were in existence during the time that the child resided with [Mother] and could have been addressed by [Mother], yet they were not. Spradlin has

obtained health care for the child's needs by obtaining Hoosier Healthwise coverage, something [Mother] could have obtained for the child well in advance of these proceedings.

8. The Court finds that [Mother] seems to be in a great transition in life. [Mother] has not been employed since the last Court hearing in this cause on October 13, 2014. While [Mother] testified that she has submitted job applications at various employers in the Hartford City area, the Court finds that, even after taking into account the numerous contacts with employers, [Mother]'s actions (or inactions) over the past 4 months since the last hearing seem minimal in light of [Mother] being without work for over one year. Spradlin's daughter testified that she has informed [Mother] of a potential job opportunity at Frito-Lay which [Mother] declined to take any initiative in seeking employment. The financial needs of the child are for the Court's consideration but will not be the sole determination on the issue before this Court on the best interests of the child. In further concluding that [Mother] is in transition in life, the Court notes the numerous changes of address for [Mother]. As the Court noted in the Order Removing Guardian and Appointment of Successor Guardian filed on October 13, 2014, "[Mother] was generally unemployed, and would leave the home for months at a time with neither Daniel nor Elizabeth knowing her whereabouts." [Mother] continues to reside with her father, Daniel. [Mother] testified that she intends to get her own place upon becoming employed, however, for the present time, [Mother] intends to reside with her father, in the event the guardianship is terminated. [Mother]'s father was the subject of concern for the Court due to an episode in which Daniel was found showering with the child and having an erection. The Court finds that to terminate the guardianship and to return the child to [the] home of [Mother]'s would cause the child's life to be just as unstable and transitional as her mother's life. Stability in the household for a young child at the age of [A.C.] is necessary for the security, physical

growth and emotional well-being and development of a child. "The party seeking the modification bears the burden of demonstrating that the existing custody order is unreasonable because, as a general proposition, stability and permanence are considered best for the child." Barger vs. Pate, 831 N.E.2d 758 (Ind. App. 2005). The Court finds that Spradlin has shown, by a clear and convincing standard, that it is in the best interests of the child, that placement of the child with Spradlin is a significant advantage to the child. In short, the child's best interests are substantially and significantly served by placement with Spradlin.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, the request of [Mother] contained in the Verified Petition For Request For P[er]missive Intervention and Termination of Guardianship for the termination of the guardianship on behalf of the child filed on October 20, 2014 is denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that all previous orders of the Court contained in the Court's Order Removing Guardian and Appointment of Successor Guardian filed on October 13, 2014 remain in effect including the limitation of contact between the child and Daniel Clark.

Appellant's App. pp. 73-75.

# Discussion and Decision

## Standard of Review

All findings and orders of the trial court in guardianship proceedings are within the trial court's discretion. Ind. Code § 29-3-2-4. Thus, we will review those findings under an abuse of discretion standard. *E.N. ex rel. Nesbitt v. Rising Sun-Ohio County Community School Corp.*, 720 N.E.2d 447, 450 (Ind. Ct. App. 1999), *reh'g denied, trans. denied.* In determining whether the trial court abused its discretion, we look to the trial court's findings of

fact and conclusions thereon. We may not set aside the findings or judgment unless they are clearly erroneous. *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000), *reh'g denied.* In our review, we first consider whether the evidence supports the factual findings. *Id.* Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Menard,* 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. *Id.* While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.* We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon,* 711 N.E.2d 1265, 1268 (Ind. 1999).

*In re Guardianship of J.K.*, 862 N.E.2d 686, 690-91 (Ind. Ct. App. 2007).

## Whether the Trial Court Abused its Discretion in Denying Mother's Petition to Terminate Spradlin's Guardianship of A.C.

As we have recently stated,

> Guardianship proceedings are guided by statute. Indiana Code § 29-3-12-1(c)(4) provides that a trial court "may terminate any guardianship if … the guardianship is no longer necessary…." However, "[i]n determining whether a guardianship should be terminated, … we have generally applied a more detailed test than required by the plain language of the [guardianship] statute." *Roydes v. Cappy*, 762 N.E.2d 1268, 1274 (Ind. Ct. App. 2002). Instead, we apply a standard similar to the one used in child custody modifications, which takes into account parental rights and the best interests of the child. *Id.*

"Indiana courts have long held that '[e]ven when a parent initiates an action to reobtain custody of a child that has been in the custody of another, the burden of proof does not shift to the parent … [r]ather, the burden of proof is always on the third party.'" [*K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 460 (Ind. 2009) (quoting *In re Guardianship of J.K.*, 862 N.E.2d 686, 692 (Ind. Ct. App. 2007)]. (modifications in original). However, as in other custody modification matters, a parent wishing to terminate a guardianship has the burden of persuading the trial court that termination is in the child's best interests and that there is a substantial change in one or more of the child-custody factors. *See id.* (citing Indiana Code § 31-14-13-6) (relating to modification of custody in a paternity action). These are "modest requirements" where, as occurred here, the party seeking to modify custody is the natural parent of a child who is in the custody of a third party. *Id.* Indeed, there is a "'strong presumption that a child's interests are best served by placement with the natural parent.'" *Id.* (quoting *In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind. 2002), *reh'g denied*). "Hence, the first statutory requirement is met from the outset" and, "as a practical matter," the natural parent's burden of establishing a substantial change in one or more of the enumerated statutory factors "is no burden at all" or is, at the very least, "minimal." *Id.*

Once the natural parent meets this "minimal" burden of persuasion, the third party must prove "by clear and convincing evidence 'that the child's best interests are substantially and significantly served by placement with another person.'" *Id.* at 461 (quoting *B.H.*, 770 N.E.2d at 287). If the third party fails to carry this burden, then custody of the child must be modified in favor of the natural parent. *Id.*

*In re Guardianship of M.N.S.*, 23 N.E.3d 759, 766 (Ind. Ct. App. 2014).

[12] Mother first contends that the trial court applied the wrong standard in evaluating her petition, effectively shifting the burden of proof to her. The trial court, however, clearly indicated in its order denying Mother's petition to

remove Spradlin as A.C.'s guardian that "the issue is whether the important and strong presumption that a child's best interest are best served by the placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and significantly served by placement with another person." Appellant's App. p. 73. This is a correct statement of the law, and in the absence of any indication to the contrary, Mother has failed to establish that the trial court departed from the above by placing the burden of proof on Mother instead of Spradlin.

[13] Mother also seems to argue that, even if the trial court applied the correct standard, it abused its discretion in failing to find that she had carried her burden in establishing a substantial change in one of more of the enumerated statutory factors.[2] We need not address Mother's argument further, however, if we conclude that Spradlin produced sufficient evidence to sustain the trial

---

[2] In guardianship cases, *e.g.*, *M.N.S.*, 23 N.E.3d at 766, this court has applied the factors listed in Indiana Code section 31-14-13-2, "Factors for custody determination":

> The court shall determine custody in accordance with the best interests of the child. In determining the child's best interests, there is not a presumption favoring either parent. The court shall consider all relevant factors, including the following:
> (1) The age and sex of the child.
> (2) The wishes of the child's parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
>     (A) the child's parents;
>     (B) the child's siblings; and
>     (C) any other person who may significantly affect the child's best interest.
> (5) The child's adjustment to home, school, and community.
> (6) The mental and physical health of all individuals involved.
> (7) Evidence of a pattern of domestic or family violence by either parent.
> (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

court's finding that "[A.C.'s] best interests are substantially and significantly served by placement with Spradlin." Appellant's App. p. 75.

[14] Even assuming, *arguendo*, that Mother carried her initial burden of proof, we conclude that the record contains sufficient evidence to sustain the trial court's judgment. The trial court found, *inter alia*, that Spradlin had formed a strong bond with A.C., provided daily care for A.C. both in Hartford City and Frankfort, provided a stable home, enrolled A.C. in preschool and athletic programs, and addressed A.C.'s long-neglected medical needs. The trial court's findings, amply supported by the record, indicate that Spradlin is able to provide a stable, safe, healthy, and comfortable environment for A.C.

[15] In contrast, the trial court found that Mother's life was in transition. The trial court noted Mother's continued unemployment, finding that her efforts to find employment were "minimal in light of [Mother] being out of work for over one year." Appellant's App. p. 74. The trial court specifically highlighted evidence that Thompson had informed Mother of a potential employment opportunity at Frito-Lay, which Mother then failed to pursue. In addition to financial concerns, the trial court noted Mother's history of frequent changes of address, noting that Mother has been known to leave Clark's home (and A.C.) for months at a time with neither Clark nor Spradlin being made aware of her whereabouts. Finally, the trial court expressed concern over Clark, with whom Mother currently resides. The trial court specifically cited Spradlin's report that she had seen Clark and A.C. showering together, Clark with an erection at the time. Essentially, Mother is asking us to overlook what the trial court found to

be credible reports of extremely inappropriate behavior by Clark. We will not do so. Needless to say, the trial court was well within its discretion in considering A.C.'s safety around Clark to be a significant concern.

[16] In summary, the trial court concluded that to terminate the guardianship with Spradlin and return A.C. to Mother would cause her life to be just as unstable and transitional as Mother's. *See Barger v. Pate*, 831 N.E.2d 758, 762 (Ind. Ct. App. 2005) ("The party seeking the modification bears the burden of demonstrating that the existing custody order is unreasonable because, as a general proposition, stability and permanence are considered best for the child."). We conclude that because Spradlin has carried her burden, the trial court did not abuse its discretion in denying Mother's petition to terminate Spradlin's guardianship.

[17] The judgment of the trial court is affirmed.

May, J., and Crone, J., concur.