## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 07 2017, 7:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Devon M. Sharpe
William Joseph Jenner
Jenner, Pattison, Sutter & Wynn, LLP
Madison, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Guardianship of K.E.N.G., J.J.M., and A.N.B., <br><br> B.M., <br> *Appellant-Respondent,* <br><br> v. <br><br> P.B., <br> *Appellee-Petitioner.* | July 7, 2017 <br><br> Court of Appeals Case No. 39A04-1701-GU-170 <br><br> Appeal from the Jefferson Circuit Court <br><br> The Honorable Darrell M. Auxier, Judge <br><br> Trial Court Cause Nos. <br> 39C01-1607-GU-32 <br> 39C01-1607-GU-33 <br> 39C01-1607-GU-34 |

**Mathias, Judge.**

[1] P.B. ("Grandmother") filed petitions to establish guardianship over her three minor grandchildren. B.M. ("Mother") opposed the petitions. The Jefferson Circuit Court granted Grandmother's petitions, and Mother appeals, arguing that the trial court's findings do not support its judgment granting Grandmother's petitions.

[2] We affirm.

## Facts and Procedural History

[3] The three children at issue are nine-year-old A.N.B., five-year-old K.E.N.G., and three-year-old J.J.M.[1] In April 2016, Mother and her three children were living with Roger Rodgers. On April 3, 2016, Rodgers repeatedly punched Mother in the face and dragged her down the front steps of the house while the children were present in the home. Mother sought help from Grandmother, who called the police. Mother had significant facial injuries and was hospitalized. As a result, she lost her job and could not afford a home. Grandmother offered to care for the children while Mother recovered from her injuries and found a new job.

[4] On July 16, 2016, Grandmother filed petitions to establish guardianship over her three minor grandchildren. Mother and Grandmother initially agreed that Grandmother would have temporary guardianship over the children and

---

[1] The children's fathers reside in Mexico and do not provide child support for their respective children.

Mother would have visitation every weekend. Mother agreed that the minor children would have no contact with Rodgers.

[5] Mother generally exercised unsupervised parenting time with the children every weekend in her home. The children were properly cared for during Mother's parenting time. Grandmother believed that Mother's new three-bedroom home was appropriate for the children. After working in a factory for a few months, Mother accepted a new job with a local hospital in December 2016.

[6] A hearing was held on Grandmother's petitions to establish guardianship over the children on December 1, 2016. Although Grandmother believed that the children were well cared for during Mother's parenting time, she suspected that Mother was still in a relationship with Rodgers. Mother informed the guardian ad litem ("GAL") that she was no longer certain that Rodgers had battered her and that it may have been one of the other two men present when she was beaten. Mother admitted that she still communicates with Rodgers but stated that she is not in a relationship with him. The GAL recommended that the trial court grant Grandmother's petitions after expressing concern about Mother's relationship with Rodgers and the safety and stability of Mother's home.

[7] On December 19, 2016, the trial court issued an order granting Grandmother's petitions and found in pertinent part:

> 9. Mother was in a relationship with Rodger S. Rodgers for approximately one year. She lived with Rodgers for a few months prior to April of 2016.

10. Rodgers has an alcohol problem. Mother believes he self-medicates with alcohol. Rodgers would get mad at Mother when she requested that he stop drinking. Whenever Rodgers drank he would get mean. He would verbally abuse Mother calling her such names as stupid and bitch. Such incidents occurred frequently. The children were present for at least some of the incidents.

11. In the early morning hours of April 3, 2016, Mother and Rodgers were at their home along with the three children and two other adults. Rodgers and the two other adults had been drinking heavily and Rodgers was extremely intoxicated from drinking whiskey and beer. Rodgers became angry because Mother had called her ex-husband and father of the youngest child. Rodgers repeatedly punched Mother in the face with a closed fist and dragged her down the front steps of the home against her will. Mother reported the events to law enforcement. She presented to the police officers with numerous marks and bruises on her arms, legs, and feet which were consistent with being dragged. She also had significant injuries to her face that were consistent with being punched in the face. Mother was hospitalized as a result of her injuries. Mother signed a battery affidavit in support of her account of the incident.

12. Rodgers was arrested and charged with Criminal Confinement and Domestic Battery by Information dated April 4, 2016. The Domestic Battery charge was enhanced due to the presence of the children at the time of the battery. The charges were still pending as of the date of the final hearing herein. At some point in time, Rodgers was released from custody.

13. Mother now claims that Rodgers did not confine or batter her. Despite having made no such statement in her encounter with the police, Mother now maintains that she may have been drugged by one of the other adults present and, as a result, mistakenly identified Rogers as her attacker. There is no

indication of Mother being in a drugged state when she made her initial report to the police and the Court concludes that Mother's present assertions are merely an attempt to persuade the State not to continue its prosecution of Rodgers.

14. Mother admits that she still cares about Rodgers. In July of 2016, she went so far as to get a tattoo of Rodgers' name. She also does not approve of the State's continuation of its prosecution of Rodgers. Furthermore, she insisted that Rodgers be invited to her family's Thanksgiving dinner this year. All signs point to the fact that Mother, despite verbal and physical abuse by Rodgers, continues to maintain a relationship with Rodgers. In short, Mother demonstrates the classic signs of battered women's syndrome and is unlikely to voluntarily end her relationship with Rodgers.

15. The children's continued exposure to the verbal and physical abuse of their Mother at the hands of Rodgers would be highly detrimental to their wellbeing. One of the children has already been diagnosed with post-traumatic stress disorder and another of the children is autistic. As a result, such exposure is likely to have an even more detrimental effect than usual on these children.

16. The Court also has concerns regarding Mother's stability and her commitment to her children. As recently as September 13, 2016, Mother sent Petitioner a text message stating that she was going to walk away from the children and cease visiting them.

17. The children are safe and doing well in the custody of the Petitioner. She has taken steps to place the one child in therapy for PTSD.

Appellant's App. pp. 24-27.

The trial court concluded that "the strong and important presumption that the children's interests are best served with placement with Mother has been clearly and convincingly overcome by the facts set forth above and the children's best interests are substantially and significantly served by placement with the Petitioner." *Id.* at 29. The trial court granted the Grandmother's petition and awarded Mother parenting time with the children "as the parties may agree" or, if they cannot agree, pursuant to the Indiana Parenting Time Guidelines. *Id*. at 30. Mother now appeals.

## Discussion and Decision

Mother argues that the trial court's findings do not support its judgment granting Grandmother's petitions to establish guardianship over her three minor children. In general, findings and orders entered in a guardianship proceeding "shall be in the discretion of the court[.]" Ind. Code § 29-3-2-4(a). We will reverse only if the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *In re Guardianship of N.R.*, 26 N.E.3d 97, 100 (Ind. Ct. App. 2015), *aff'd on reh'g*, 30 N.E.3d 783.

Our supreme court has recognized "the important and strong presumption that [a] child's best interests are ordinarily served by placement in the custody of the natural parent." *In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind. 2002). To overcome this presumption and place the child with someone other than a natural parent, "a trial court must be satisfied by clear and convincing evidence

that the best interests of the child require such a placement. The trial court must be convinced that placement with a person other than the natural parent represents a substantial and significant advantage to the child." *Id*.

> In a proceeding to determine whether to place a child with a person other than the natural parent, evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person, would of course be important, but the trial court is not limited to these criteria. The issue is not merely the "fault" of the natural parent. Rather, it is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and significantly served by placement with another person. This determination falls within the sound discretion of our trial courts, and their judgments must be afforded deferential review. A generalized finding that a placement other than with the natural parent is in a child's best interests, however, will not be adequate to support such determination, and detailed and specific findings are required.

*Id*.

[11] Because we consider only the evidence favorable to the trial court's judgment, on appellate review, the appellant labors under a heavy burden, and must show that the trial court's findings are clearly erroneous." *Id*. at 288. Additionally,

> in reviewing a judgment requiring proof by clear and convincing evidence, an appellate court may not impose its own view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing

evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence.

*Id.*

[12] Indiana Code section 29-3-5-3 provides that the trial court shall appoint a guardian for a minor if "the appointment of a guardian is necessary as a means of providing care and supervision of the physical person or property of the . . . minor." "Necessary means 'absolutely essential' or 'needed to achieve a certain result or effect.'" *Hinkley v. Chapman*, 817 N.E.2d 1288, 1291 (Ind. Ct. App. 2004 (quoting *E.N. ex rel. Nesbitt v. Rising Sun-Ohio County Community School Corp.*, 720 N.E.2d 447, 452 (Ind. Ct. App. 1999), *trans. denied*).

[13] Mother argues that the guardianship was not "necessary" because the evidence established that she is able to properly and safely care for her children, and that Grandmother did not present clear and convincing evidence that the children's best interests "are substantially and significantly served by placement" with Grandmother. *See B.H.*, 770 N.E.2d at 287. She claims that the trial court has deprived her of her constitutional right to maintain "care custody and control of her children because the trial court believes Mother is making bad romantic choices." Appellant's Br. at 16.

[14] The trial court found that Mother is still involved in a relationship with Rodgers, which is supported by the evidence. Mother now believes that she was possibly drugged on the date Rodgers battered her in April 2016 and that

another individual who was present at the time assaulted her. Tr. pp. 73-74. Mother also got a tattoo with Rodgers's name in July 2016 and insisted that he be invited to the family's Thanksgiving meal just days before the hearing in this case. Mother admitted that when she lived with Rodgers, the children were present on occasions when Rodgers had too much to drink and would verbally abuse Mother. Tr. pp. 78-79. Mother also admitted that she still cares for Rodgers.

[15] In September 2016, Mother was frustrated with Grandmother, and sent a text message stating, "I am not going [on] another visit, officially walking away. I am over it." Tr. p. 23. Mother did not see the children for a few weeks after she sent the message. Mother also did not respond to the GAL's requests to visit her home, and the GAL does not believe that Mother has the resources to provide for the children's needs on an everyday basis.

[16] The children have special needs and require counseling. Grandmother began taking the oldest child to a counselor after she was placed in Grandmother's care. On the date of the hearing the two oldest children were excelling in school, and the youngest child was enrolled in Head Start. Finally, the GAL recommended that the trial court grant Grandmother's petitions for guardianship over the children.

[17] Mother loves her children and is taking steps to stabilize her financial resources and living situation. However, for the reasons discussed above, Grandmother established that the guardianship is necessary and rebutted the presumption that

it is in the children's best interests to be returned to their Mother's care. We therefore affirm the trial court's judgment granting Grandmother's petitions to establish guardianship over the children.

[18]     Affirmed.

Kirsch, J., and Altice, J., concur.